Argued and submitted October 19, 1984, affirmed February 6, reconsideration denied March 22, petition for review denied May 21, 1985 (299 Or 203)

# BABITZKE,
*Respondent,*

*v.*

# SILVERTON UNION HIGH
## SCHOOL NO. 7J,
*Petitioner.*

(83-1; CA A30421)

695 P2d 93

William G. Paulus, Salem, argued the cause for petitioner. With him on the brief were Paulus & Callaghan, Salem.

Robert D. Durham, Portland, argued the cause for respondent. With him on the brief were Kulongoski, Heid, Durham & Drummonds, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Petitioner, a school district, seeks review of an order of the Fair Dismissal Appeals Board which set aside the district's dismissal of respondent, a permanent teacher. We affirm.

The district hired respondent in 1977. Her initial contract provided that she would teach high school and, for additional compensation, also coach tennis, basketball and gymnastics. In 1980 she had become a "permanent teacher." ORS 342.815(5). The record does not disclose whether she then had extra duty responsibilities other than gymnastics. Her contract for the 1982-83 school year stated:

"(1) The 1982-83 base salary for this contract is $16,395.00.

"(2) The following extra duty responsibilities, if any, and salary amounts become a part of this contract _____ Softball - $1,319.00 Gymnastics - $1,319.00 Will be added to the base."

On December 14, 1982, respondent wrote to her principal:

"This letter is to inform you that I am resigning as Head Girls Gymnastics Coach [for the 1983-84 school year]. I have coached the sport for the past 6 years and I am concerned about the safety of the gymnasts. The sport has reached a point where I can not safely spot [catch a falling gymnast] and teach the girls the necessary skills to compete in our district. I have been fortunate enough to have Huntley help coach the team the past 2 years and the program has vastly improved due to his efforts. I can not continue to coach this sport alone and ensure the safety of the gymnasts attempting the advanced skills that are needed for competition. There is a need for an assistant coach or an individual who can safely teach the girls the required gymnastics skills."

The district's superintendent responded on January 11, 1983:

"As you are aware, your contract with the district is as a teacher/coach and neither you nor the district can unilaterally change the contract.

"* * * If you are now unable to 'safely spot and teach the girls the necessary skills to compete in our district' you must, in my opinion, either return to school, gymnastics clinics or

workshops in order to fully qualify yourself for your contractual responsibilities or resign as a member of the Silverton Union High School faculty in order that the District may secure a replacement who can in good professional conscience safely and enthusiastically fulfill all the responsibilities of the job."

On February 13, 1983, respondent replied that "there is some confusion as to why I submitted my resignation as Head Gymnastics Coach." She explained that her short stature had become a problem because of the skills necessary for high school gymnastics competition and the lack of an assistant coach to "spot" the participants. She stated that she was still capable of fulfilling the remainder of her coaching and classroom instructional duties.

At the school board meeting on February 14, 1983, respondent confirmed that she was resigning as girls' gymnastics coach for the 1983-84 school year, unless the district would hire an assistant gymnastics coach. The superintendent notified her:

"At its regular school board meeting held on February 14, 1983, the Board of Education of Silverton Union High School District 7J voted to accept your resignation submitted December 14, 1982.

"Although your letter indicates your desire to resign from the Head Girls' Gymnastics Coach position the District considers the letter a resignation from all of your duties as a teacher-coach within the school system. Since you were hired and have been continuously employed as a teacher/coach it is impossible without the mutual consent of both parties to your contract, for you to unilaterally resign one portion of the agreement and elect to continue your duties in all other portions.

"We are assuming that you intended for your resignation to become effective at the end of the 1982-83 school year."

Respondent replied that she had not resigned from teaching or coaching softball or submitted a "total resignation." She appealed to FDAB.

ORS 342.845 provides that a permanent teacher shall not be "dismissed * * * without the consent of the teacher except as provided in [the Fair Dismissal Law]." In the absence of consent, a district may not dismiss a permanent

teacher except for cause and pursuant to prescribed procedures. *See* ORS 342.865-.895. Respondent asserts, and the district concedes, that it did not comply with the procedures that the Fair Dismissal Law prescribes for dismissal of respondent without her consent.

As its first assignment of error, the district asserts that FDAB erred when it denied the district's motion to dismiss for lack of jurisdiction to hear the dispute. ORS 342.905(1) provides that "if the district school board dismisses the teacher, the teacher * * * may appeal that decision to the Fair Dismissal Appeals Board." The district argues that FDAB may hear respondent's appeal only if the district dismissed her, that her gymnastics coaching duties were an indivisible part of her teaching contract, that when she resigned from gymnastics coaching she resigned from all of her duties and that consequently it did not dismiss her. Respondent, on the other hand, argues that she did not resign or intend to resign from all of her duties and that the district, therefore, dismissed her when it purported to accept her resignation.

The jurisdictional issue and the merits are interrelated. If respondent resigned from all of her duties and, therefore, consented to the termination of her employment, the district did not dismiss her and was not obliged to follow procedures that the Fair Dismissal Law prescribes for dismissal. If she did not resign from all of her duties and did not consent to the termination of her employment, then the district dismissed her in violation of law, because it did not follow those procedures. In determining whether it had jurisdiction, FDAB had to determine whether the district dismissed her.

FDAB made findings of fact on the jurisdictional issue that are supported by substantial evidence:

"6.   On February 14, 1983, the school board considered [respondent's] resignation. [Respondent] attended the meeting and confirmed that she was resigning as gymnastics coach if the district could not hire an assistant coach. The board discussed the matter and voted to accept the resignation on the board's understanding that [respondent's] resignation legally constituted a resignation from her entire position of both teaching and coaching. *The board understood that [respondent] intended to resign only from gymnastics coaching* but it treated the resignation as a total resignation because

it viewed the teaching/ coaching contract as indivisible and not capable of unilateral modification.

"* * * * *

"9. The July 1, 1982, teacher contract between [respondent] and [district] for the period of the 1982-1983 school year does not make any reference to resignations. [The district] submitted no evidence of any rule or policy making resignation from part of a teacher's job the equivalent of resignation from the whole. The panel thus determines that no such rule or policy exists.

"* * * * *

"*ULTIMATE FINDINGS OF FACT*

"2. [Respondent] intended to resign only from the gymnastic coaching assignment and not from any other portion of her employment. [The district] understood that this was [respondent's] intent." (Emphasis supplied.)

In its Conclusions of Law, FDAB interpreted the statutory term "dismisses:"

"Obviously, the Fair Dismisal Appeals Board has no jurisdiction if there has been no dismissal. The record shows, however that [the district] notified [respondent] of termination of her employment and that [respondent] never consented to such termination. [The district] says this termination action was not a dismissal but was merely acceptance of [respondent's] resignation from her employment. The panel concludes that the burden is on [the district], if it chooses to rely on resignation, to prove that [respondent] in fact resigned from her employment. The evidence shows to the contrary.

"*The critical ingredient of a resignation is the intent of the employe to terminate the employment relationship.* [Respondent's] intent, however, was to *continue* her employment but not to coach gymnastics. * * *

"* * * * *

"* * * [N]othing in the contract in this case, in any district rule or policy or in any Oregon statute, to the panel's knowledge, warns [respondent] that an attempted partial resignation from an indivisible contract shall be the legal equivalent of an actual resignation from the entire contract.

"The panel believes that voluntary relinquishment of employment is best analyzed as occurring in essentially three ways, namely by mutual rescission of the contract, by resignation, or by abandonment. In all three situations *intent of the*

*employe to relinquish employment is essential,* although in abandonment, the intent is often presumed." * * *

"[Respondent] did not voluntarily relinquish her job with [the district]. She never intended to resign from her job and [the district] so understood. *Accordingly, whether she is considered to have resigned from a portion of her contract or only from a specific future duty assignment or whether her contract was indivisible or divisible, the fact is, she never resigned from her entire employment that [the district] could accept.* [The district's] attempted acceptance of a resignation from her employment and the superintendent's notice to [respondent] that she was terminated as of the end of the 1982-1983 school year was thus a 'de facto' dismissal. The motion to dismiss the appeal must therefore be denied." (Emphasis supplied, citation omitted.)

■ The term "dismissed" is an "inexact term." *See Springfield Education Assn. v. School Dist.,* 290 Or 217, 224, 621 P2d 547 (1980). We must decide if FDAB's interpretation is correct. It is, because it coincides with the "legislative policy which inheres in the meaning of the statute." 290 Or at 228. ORS 183.482(8)(a). Moreover, the district does not assert that it and respondent mutually agreed to end her employment. ORS 342.545(2). Accordingly, if respondent did not intend to resign from all of her duties, the district dismissed her when it terminated her employment. The Board had jurisdiction to hear respondent's appeal and did not err when it denied the district's motion to dismiss.

■ The district also asserts that FDAB erred when it ruled on the merits that respondent did not resign from all of her duties and, therefore, did not consent to her dismissal. Respondent asserts that, when the district deemed her resignation from gymnastics coaching as a resignation from all of her duties, the district dismissed her without her consent. FDAB made findings of fact on the merits substantially similar to those that it made on the jurisdictional issue and also made additional findings. They are all supported by substantial evidence.[1] In its conclusions of law FDAB stated:

[1] "3. Beginning in 1976, [the district] changed the wording of its teacher contracts in an attempt to make certain extra duty responsibilities a part of one single contract for both teaching and extra duties. This change is exemplified by the language in [Babitzke's] last contract * * * stating: "The following extra duty

"The record shows no express statement or communication of [respondent] consenting to dismissal. [The district] apparently contends, however, that [respondent's] conduct constituted implied consent to dismissal. [The district] argues that [respondent] knew she could not unilaterally resign from part of her contractual duties. Therefore, [the district] seems to be saying, when she insisted on going ahead with her resignation in the face of the superintendent's clear warning that she could not so modify her contract without the district's consent, she impliedly consented to dismissal.

"The fact that [respondent] chose the word 'resign' when she notified the district of her intent to discontinue the gymnastics coaching responsibility is a fact from which the panel could infer that she believed the responsibility was on-going rather than one which ceased at the end of the season or at the end of the school year. Moreover by the time she read the superintendent's letter of January 11, 1983, pointing out that neither she nor the district could 'unilaterally change the contract,' she must have realized that her refusal to continue with gymnastics coaching, unless she obtained the district's consent, would be treated by the district as a violation of her

---

responsibilities, if any, and salary amounts become a part of this contract." [The district] made the change in the contract language for the purpose of preventing a teacher's unilateral withdrawal from performance of such extra duties and for helping prevent situations where it could find no teacher willing to perform such duties. Coaching responsibilities were one type of extra duty responsibility so handled. * * *

"4. [The district] considered the contract language to be a sufficient means of informing teachers that any release from coaching duties specified as 'part of' the contract had to be by 'mutual consent' of the district and the teacher. It had no written policy to this effect, however, and [Babitzke] was never given any specific communication to this effect. A number of the other teachers at the high school who also coach have had the understanding, however, that one cannot resign coaching duties without consent of the district and that if such consent is not obtained they must continue to perform those responsibilities.

"5. At the time [Babitzke] was hired she was told that she was a finalist for the position to be filled and her coaching qualifications were discussed. This was the essence of discussions with her at that time.

"6. [Babitzke] was never told that a resignation from any coaching duties in the absence of district consent constituted a resignation from her entire contract and she was never told that resignation, without district consent, from any duty specified in the contract would result in her dismissal.

"* * * * *

"14. No written contract between [the district] and [Babitzke] made any reference to resigning or resignations. [The district] has no rule or written policy indicating that resignation from part of a contract constitutes resignation from the whole contract."

contractual commitment. Also, she must have realized at this point that her insistence on resigning without [the district's] consent could well result in her dismissal.

"There is no evidence, however, that [respondent] was told dismissal would result if she maintained her stance. (In fact, Exhibits B, D and E suggest that [the district's] concern was at all times limited to the termination of [respondent's] services by 'resignation.') There is, furthermore, no evidence that [respondent] was certain in her own mind that dismissal would result. Her letters show, in fact, a hope that the district would ultimately sympathize with her predicament and either consent to a release from her gymnastics coaching responsibilities or furnish her an assistant coach. *Because [respondent], while maintaining her stance of choosing to resign from gymnastics coaching, had at least some hope that her stance would result in either the release from coaching duties or coaching assistance that she desired, the panel cannot conclude that her conduct of insisting on resigning her gymnastice coaching responsibilities showed consent to her dismissal.*

"Even if [respondent] had believed her dismissal was inevitable, that belief together with her maintaining her stance of choosing to resign from gymnastics coaching, does not imply that she consented to dismissal. The evidence shows that she believed her resignation was the proper action for her to take under the circumstances. *Accordingly, even if she believed dismissal was inevitable the evidence shows that she would nevertheless consider a dismissal to be unfair. The panel concludes that where a teacher considers anticipated dismissal to be an unfair sanction, the teacher cannot be said to 'consent' to the dismissal, within the meaning of ORS 342.845, in the absence of some clear statement of the teacher that he or she nevertheless agrees that dismissal action be taken.*

"*Finally, the panel believes that any 'consent' to dismissal under ORS 342.845, in order to excuse compliance with the statutory dismissal procedures, must be shown by clear evidence in the record. Such waiver of statutory rights should not be lightly inferred.* The evidence in the record fails to show that [respondent] even impliedly consented to her dismissal; instead it shows that she felt compelled by concerns of safety of the gymnasts, etc., to stand by her resignation action and that she wished to continue with the rest of her teaching and coaching responsibilities. The record accordingly does not show clear evidence of consent to dismissal." (Emphasis supplied.)

■ The statutory term "consent" is also an "inexact term." FDAB's interpretation of that term is correct. It did not err when it ruled that respondent did not intend to consent and did not consent, explicitly or implicitly, to her dismissal. Her contract did not state, nor was it part of her contract because of any statute, district policy or rule, that if she resigned from any of her extra duty responsibilities it was a resignation from all of her duties. The district dismissed her without her consent and without following the procedures prescribed by law.

Affirmed.