Patricia COSTELLO, Margaret Costello, Paula Costello and J. Chandler Knapek, Appellees,

v.

Kevin McFADDEN, Appellant,

and

Weldon Roberts and Big Sandy Oil, Inc., Defendants.

No. 95–1105.

Supreme Court of Iowa.

Sept. 18, 1996.

Stephen H. Small, Fairfield, and Carl Michael Joerger, Newport Beach, CA, for appellant.

Jay B. Marcus of Marcus, Courtade & Thompson, P.C., Fairfield, and John Courtade of John Courtade, P.C., Austin, TX, for appellees.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

The district court denied the defendant's motion to vacate judgment against him. The court also denied the plaintiffs' request for attorney fees. The defendant appealed and the plaintiffs cross-appealed. We affirm on the appeal and the cross-appeal.

I. *Background Facts.*

In April 1991 Kevin McFadden approached the plaintiffs to solicit their investment in an oil well drilling operation conducted by Big Sandy Oil, Inc., a Texas corporation. The plaintiffs are Patricia Costello, Margaret Costello, Paula Costello, and J. Chandler Knapek. The Costellos are sisters; Knapek is Paula's husband. At the time, the plaintiffs lived in Iowa and McFadden lived in California.

McFadden spoke with the plaintiffs several times by phone and in person during April and May. McFadden strongly urged them to invest in the drilling operation. McFadden's acquaintance Welden Roberts was selling interests in the drilling operation, and McFadden urged the plaintiffs to purchase the interests from Roberts. At the time, Roberts also lived in California.

McFadden represented to the plaintiffs that investing in Big Sandy was an extremely

low-risk, high-yield opportunity. McFadden personally guaranteed the return of their investment.

In May the plaintiffs signed an agreement with Big Sandy whereby each invested $7500. Later that summer, McFadden and Roberts spoke again with the plaintiffs, attempting to induce them to make further investment in Big Sandy.

In September the plaintiffs signed additional investment agreements with Big Sandy. The four invested an additional $15,-000, bringing their collective investment to $45,000.

The well did not produce as McFadden had promised. The plaintiffs lost their entire $45,000 investment, less a $20,650 payment McFadden made them from his personal funds.

## II. *Background Proceedings.*

On May 13, 1993, the plaintiffs sued McFadden, Roberts, and Big Sandy. Count I of their petition is the only count involved in this appeal. In count I the plaintiffs alleged McFadden, Roberts, and Big Sandy sold them unregistered securities in violation of Iowa's Blue Sky Law. *See* Iowa Code § 502.501 (1991). The plaintiffs asked for judgment against each defendant, jointly and severally, for the lost amount of their investment plus prejudgment interests, costs, and attorney fees.

Roberts told McFadden he would take care of defending against the claims. Roberts retained Michael R. Brown as local counsel to defend against the claims. Roberts paid Brown a retainer.

On July 16 Brown filed an answer on behalf of all three defendants. The answer admitted (1) the plaintiffs collectively invested $45,000 for interests in an oil and gas well to be drilled and operated by Big Sandy in Texas and (2) the interests were not registered as securities in Iowa. The answer, however, denied that the oil and gas interests were securities under Iowa law. The answer asked that the petition be dismissed.

Between July 16 and January 20, 1994, Brown communicated with Roberts several times. Roberts told McFadden not to worry about the defense and that everything was being taken care of. Brown never spoke with McFadden, although Brown made one unsuccessful attempt to call.

On January 20 the plaintiffs filed a motion for summary judgment on count I—the sale of unregistered securities count. *See* Iowa R.Civ.P. 237. The court granted their unresisted motion on February 11.

The court filed the final judgment order on February 18. The judgment is against the three defendants jointly and severally and is in favor of each individual plaintiff for the amount of their outstanding investments.

Until the following August, McFadden was unaware that a judgment had been rendered against him. He then retained counsel, who filed a motion to vacate the judgment against McFadden.

In substance the motion alleged the adverse judgment should be vacated because it was obtained due to an "irregularity" under Iowa Rule of Civil Procedure 252(b). The motion alleged that Brown's unethical conduct in connection with his representation of the three defendants constituted the irregularity under rule 252(b). The motion also alleged a fall back position: Brown's failure to resist the summary judgment was tantamount to an unauthorized consent to judgment, and such consent was an irregularity under rule 252(b).

The plaintiffs filed a resistance. In a separate motion plaintiffs asked the court to award them attorney fees under Iowa Code section 502.501.

Following a hearing, the district court denied both motions. McFadden appeals and the plaintiffs cross-appeal.

## III. *The Appeal.*

As in the district court, McFadden contends on appeal that the judgment against him should be vacated because it was obtained as a result of an irregularity under Iowa Rule of Civil Procedure 252(b). Rule 252(b) provides in relevant part:

> Upon timely motion and notice under R.C.P. 253 the court may ... vacate ... a

final judgment or order ... on any of the following grounds:

. . . .

(b) Irregularity or fraud practiced in obtaining the [final judgment or order].

The irregularity McFadden relies on relates to alleged unethical conduct by his attorney, Brown. The alleged unethical conduct includes violations of Iowa Code of Professional Responsibility DR 5–105(C) (lawyer shall not continue representation of multiple clients if doing so adversely affects the lawyer's exercise of independent professional judgment), DR 5–105(D) (lawyer may represent multiple clients if each consents to arrangement after full disclosure of possible effect of multiple representation on lawyer's independent judgment), DR 5–107(A)(1) (lawyer shall not accept compensation for legal services from anyone other than client, unless client consents after full disclosure), and DR 5–106(A) (lawyer representing two or more clients shall not make aggregate claim settlements, unless each client consents after being fully advised of the nature and extent of settlement).

McFadden also argues the fall back position he relied on in the district court: Brown's lack of resistance to the motion for summary judgment amounted to an unauthorized consent to judgment. The unauthorized consent to judgment, McFadden argues, also constituted an irregularity under rule 252(b).

A. *What constitutes an irregularity under rule 252(b)?* In *Forsmark v. State,* 349 N.W.2d 763 (Iowa 1984), we defined irregularity in rule 252(b) this way:

The doing or not doing that, in the conduct of a suit at law, which, conformably with the practice of the court, ought or ought not to be done. Violation or nonobservance of established rules and practices. The want of adherence to some prescribed rule or mode of proceeding; consisting either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time or improper manner.

*Forsmark,* 349 N.W.2d at 767 (quoting Black's Law Dictionary 744 (rev. 5th ed. 1979)).

In *Forsmark,* the trial judge found against the plaintiffs in a medical malpractice case against the State. When the case was tried to the court, the parties were unaware that a wrongful death malpractice action was pending against the plaintiffs' chief medical witness. The wrongful death malpractice action had been brought by the estate of the trial judge's deceased brother. The trial judge had discussed the case with the administrator of the estate. Following the adverse verdict, the plaintiffs in *Forsmark* filed a motion to vacate the judgment under rule 252(b). They alleged that the judge's failure to disqualify himself constituted an irregularity that required the judgment to be vacated and a new trial granted. Another judge heard the motion and ruled against the plaintiffs.

On appeal the plaintiffs relied on Iowa Code of Judicial Conduct Canon 3 C(1) (currently at Iowa Code of Judicial Conduct Canon 3 D(1)(a) (1996)). That canon requires judges to disqualify themselves from proceedings in which their impartiality might be questioned. The canon gives two examples of proper grounds for disqualification: (1) where the judge "has a personal bias or prejudice concerning a party," or (2) where the judge has "personal knowledge of disputed evidentiary facts." Iowa Code of Judicial Conduct Canon 3 C(1). We said in *Forsmark* that a "judge's impartiality is basic to the due and orderly conducting of litigation. Failing to follow *required procedures* to determine a disqualification issue is thus an irregularity within the meaning of rule 252(b)." *Forsmark,* 349 N.W.2d at 767 (emphasis added).

The "required procedures" referred to in *Forsmark* were illustrated in this passage from the case:

Briefly stated, Canon 3 C(1)(a), is basically a broad standard by which a judge should sua sponte determine the matter of self-recusation. Stated otherwise it, followed by specifics (interest and relationship), stands as a guiding precept upon which every judge, by an objective in-

depth search of his or her own conscience, must decide whether a fair trial dictates he or she should make way for another judge to preside in a given justiciable controversy be it civil, criminal or otherwise.

*Id.* (quoting *State v. Smith,* 242 N.W.2d 320, 323–24 (Iowa 1976)).

The trial judge in *Forsmark* knew, before trial started, the identity of the plaintiffs' chief medical witness. We held this knowledge triggered the judge's duty to disclose his relationship with his deceased brother's estate. *Forsmark,* 349 N.W.2d at 767–68. We concluded that "the judge's failure to disclose the information deprived the plaintiffs of the opportunity to make a timely request that he disqualify himself … [if] 'his impartiality might reasonably be questioned.'" *Id.* (quoting Canon 3 C(1)). This failure to disclose and to follow the recusal determination procedure "constituted an irregularity in the obtaining of the judgment within the meaning of rule 252(b)." *Id.*

Other states have rules similar to 252(b). Their case law defines irregularity like we do. The relief is also the same: vacation of the judgment. The cases illustrate in various contexts how an irregularity may arise. *See, e.g., White Oak Coal Co. v. Beck,* 176 Ill.App. 86, 90 (1912) (irregularity is ground for vacating judgment; irregular judgment defined as "not entered in accordance with the practice and course of proceeding where it was rendered"; irregularity occurred because judgment was entered against garnishee without fixing trial date as required by statute; garnishee had appeared and answered); *Becker v. Roothe,* 184 Kan. 830, 837–39, 339 P.2d 292, 298–300 (1959) (irregularity for vacating judgment defined "as the failure to observe that particular course of proceeding which, conformable with the practice of the court, ought to have been observed in the case"; irregularity consisted of entering default judgment for $379.28 without any proof of damages although statute required such proof); *Early v. Early,* 338 Md. 639, 652, 659 A.2d 1334, 1340 (1995) (irregularity for vacating judgment defined as "failure to follow required process or procedure" in the conduct of a suit; irregularity consisted of clerk's failure to send copy of order terminating child support to child support recovery unit in violation of civil procedure rule); *Henderson v. Jackson,* 77 Md.App. 393, 401, 550 A.2d 713, 715 (1988) (irregularity consisted of clerk's failure to notify defendant of an order of default as civil procedure rule required); *Hardy v. Hardy,* 269 Md. 412, 416–18, 306 A.2d 244, 247–48 (1973) (irregularity consisted of waiving notice of publication in name change case where civil procedure rule required publication); *Mutual Benefit Soc'y of Baltimore, Inc. v. Haywood,* 257 Md. 538, 541–42, 263 A.2d 868, 870–71 (1970) (irregularity consisted of clerk's failure to give parties notice of contemplated dismissal for lack of prosecution; state rule required notice but supreme court rule did not; held, state rule prevailed and court ruled dismissal order must be vacated because of the irregularity); *McDaniel v. Lovelace,* 439 S.W.2d 906, 910–11 (Mo.1969) (irregularity for vacating judgment defined as "want of adherence to some prescribed rule or mode of procedure, consisting either in omitting to do something that is necessary for the due and orderly conduct of the suit, or in doing it at an unreasonable time or in an improper manner"; irregularity consisted of failure to appoint guardian ad litem for minor as required by civil procedure rule); *Northcutt v. King,* 23 N.M. 515, 518, 169 P. 473, 474–75 (1917) (irregularity for vacating judgment defined as "the want of adherence to some prescribed rule or mode of proceeding; and it consists either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time or improper manner [:] … a departure from some prescribed rule or regulation"; irregularity consisted of court dismissing action on foreign judgment because defendants did not file affidavit of residence as they had agreed to do; held that because no statute or court order required the affidavit, the judgment was contrary to course of law and practice of the courts).

To better understand the meaning of irregularity, we think it would be helpful to keep in mind the different types of judgments and the remedies for correcting errors in them. According to one court,

[j]udgments may be void, irregular or erroneous. A void judgment is one that has merely semblance, without some essential element or elements, as where the Court purporting to render it has not jurisdiction. An irregular judgment is one entered contrary to the method of procedure and practice under it allowed by law in some material respect; as if the Court gave judgment without the intervention of a jury in a case where the party complaining was entitled to a jury trial and did not waive his right to the same. An erroneous judgment is one rendered contrary to law. The latter cannot be attacked collaterally at all, but it must remain and have effect until by appeal to a Court of Errors it shall be reversed or modified. An irregular judgment may ordinarily and generally be set aside by a motion for the purpose in the action. This is so because in such case a judgment was entered contrary to the course of the Court by inadvertence, mistake or the like. A void judgment is without life or force, and the Court will quash it on motion. . . . Indeed, when it appears to be void, it may and will be ignored everywhere, and treated as a mere nullity.

*Carter v. Rountree,* 109 N.C. 29, 32, 13 S.E. 716, 717 (1891) (citation omitted).

■ From the foregoing authorities, we are able to distill some general principles concerning what constitutes an irregular judgment for purposes of rule 252(b). First, we think the rule covers the cases where a party suffers an adverse ruling because of some action or inaction on the part of the court or some court personnel. *See Anchor Sav. & Loan Ass'n v. Dysart,* 189 Kan. 147, 150, 368 P.2d 293, 295 (1962) ("[T]he test to be applied in all cases [in which a party is claiming irregularity in obtaining a judgment] is the want of adherence to some prescribed rule or mode of procedure *on the part of the trial court* in rendering the judgment in question.") (emphasis added).

Second, the action or inaction must be contrary to some prescribed rule, mode of procedure, or court practice involving the conduct of a lawsuit. And the party complaining must not have caused, been a party to, or had prior knowledge of the breach of the rule, the mode of procedure, or the practice of the court.

■ Rule 252(b) mentions fraud as another ground for vacating a final judgment. In contrast to irregularity, fraud was meant to cover the conduct of a party who obtains the judgment. The fraud referred to must be extrinsic, that is, some act or conduct of the prevailing party that has prevented a fair submission of the controversy. *In re Marriage of Short,* 263 N.W.2d 720, 723 (Iowa 1978). Extrinsic fraud includes lulling a party into a false sense of security or preventing the party from making a defense. *Id.*

We have recognized the underlying purpose for vacating judgments resulting from extrinsic fraud is to promote the policy of law that every cause of action should be tried on its merits. *Id.* We think the same purpose underlies the irregularity ground in rule 252(b). As we alluded to in *Forsmark,* we think an additional purpose underlying the irregularity ground in rule 252(b) is to ensure that litigation is fair and orderly. *See Forsmark,* 349 N.W.2d at 767.

■ B. *Do the alleged ethical violations constitute an irregularity for purposes of rule 252(b)?* We conclude the alleged ethical violations do not constitute an irregularity for purposes of rule 252(b), even if eventually proven in another forum. (Like the district court, we make no determination whether Brown committed any ethical violations, leaving that question for another forum.) There is no evidence that either the court rendering the judgment or court personnel was a party to or had knowledge of the alleged ethical violations. None of the alleged ethical violations relate to the breach of any rule, mode of procedure, or court practice pertaining to the conduct of the litigation. In short, the allegations of attorney misconduct relate solely to the relationship between McFadden and his attorney, Brown. The allegations have nothing to do with the court, court personnel, or the conduct of the litigation.

C. *Did Brown consent to the motion for summary judgment? If he did, did the consent amount to an irregularity for purposes of rule 252(b)?* We move to McFadden's fall back position: Brown's failure to resist the

summary judgment motion was tantamount to an unauthorized consent to a judgment, and such consent was an irregularity under rule 252(b).

■ "Consent" is "a voluntary agreement by a person in the possession and exercise of sufficient mental capacity to make an intelligent choice to do something proposed by another." Black's Law Dictionary 305 (5th ed. 1990). *See also In re R. Eric Peterson Constr. Co.*, 951 F.2d 1175, 1180 (10th Cir. 1991) (statute provided that debtor may not obtain damages against petitioning creditors in involuntary bankruptcy proceeding, if debtor consents to dismissal of petition; within meaning of this statute, debtor did not "consent" to petitioning creditors' requests for dismissal of involuntary petition even though debtor did not oppose motion to dismiss; therefore, debtor was not precluded from seeking bad faith damages from petitioning creditors); *Alaska Airlines v. United States*, 399 F.Supp. 906, 910 (N.D.Cal.1975) (consent is not unilateral but requires two parties, the one giving consent and the one to whom consent is given); *Casserly v. Bench*, 521 S.W.2d 395, 396 (Mo.1975) (rule provided that court could direct attorneys for parties to appear before it for pretrial conference "in the county where the case is pending if all parties consent"; held that "consent" in rule meant express willingness; absence of any affirmative objection did not constitute consent); *Babitzke v. Silverton Union High School No. 7J*, 72 Or.App. 153, 161–62, 695 P.2d 93, 98 (1985) (where teacher considered anticipated dismissal to be unfair sanction, teacher could not be said to "consent" to dismissal within meaning of statute without some clear statement from teacher that she nevertheless agreed that dismissal should be taken).

■ According to the common meaning of consent, it takes two to agree. The person consenting must *voluntarily* agree to the proposed action. In addition, the party consenting must express his or her willingness. Mere inaction to a proposal is not consent.

■ Here, Brown did nothing when the plaintiffs filed their motion for summary judgment. There is no evidence that Brown

expressed his willingness in any way either to the plaintiffs or to the court that the court sustain the motion. In these circumstances we can hardly say that Brown voluntarily agreed, that is, consented to the court's ruling on the summary judgment motion. Having reached this conclusion, we need not decide whether the alleged "consent" constituted an irregularity within the meaning of rule 252(b).

The district court correctly ruled that the alleged ethical violations did not constitute an irregularity for purposes of rule 252(b). The court also correctly ruled that Brown did not consent to the court's ruling on the motion for summary judgment in the original proceeding. The district court therefore correctly denied McFadden's petition to vacate judgment against him.

### IV. *The Cross–Appeal.*

■ After the district court entered final judgment against McFadden in the original proceeding, the plaintiffs obtained a New York judgment on the Iowa judgment. In New York, the plaintiffs' New York lawyers garnished funds McFadden had coming to him. McFadden then sought to stay the New York proceedings.

Iowa Code section 502.501 provides that any person who violates section 502.201 (sale of unregistered securities) shall be liable for reasonable attorney fees to the person purchasing the securities. Under section 502.501, the plaintiffs sought attorney fees they incurred in attempting to collect the judgment in New York. The district court refused to allow these fees, and the plaintiffs contend this was error.

Our review on this issue is for legal error. Iowa R.App.P. 4.

Generally, attorney fees are recoverable only by statute or under a contract. *See, e.g., Humiston Grain Co. v. Rowley Interstate Transp. Co.*, 512 N.W.2d 573, 576 (Iowa 1994) ("Attorney fees are not recoverable as court costs unless based on a statute or agreement authorizing them."). There is nothing in section 502.501 providing for collection of attorney fees incurred to enforce a judgment. The statute only allows attorney

fees in the purchaser's action against the seller for violating the statute against the sale of unregistered securities.

Moreover, the present proceeding is to vacate a judgment. There is nothing in rule 252(b) to allow the collection of attorney fees to enforce a judgment. *See Severson v. Peterson,* 364 N.W.2d 212, 214 (Iowa 1985) (plaintiff sought attorney fees in rule 252(b) action to vacate judgment under landlord-tenant act; held that there was no authority in rule 252(b) for allowance of attorney fees); *Home Fed. Sav. & Loan Ass'n v. Robinson,* 464 N.W.2d 894, 896 (Iowa App.1990) (plaintiff sought attorney fees in rule 252(b) action to vacate judgment in mortgage foreclosure action; held that there was no authority in rule 252(b) for allowance of attorney fees).

The district court correctly determined that the plaintiffs could not recover the attorney fees they had incurred in New York in attempting to enforce their judgment against McFadden. The district court therefore correctly refused to allow the fees.

### V. *Disposition.*

Because we conclude the district court correctly denied McFadden's petition to vacate judgment and correctly refused to allow the plaintiffs their requested attorney fees, we affirm on the appeal and the cross-appeal.

**AFFIRMED ON APPEAL; AFFIRMED ON CROSS–APPEAL.**