# IN THE COURT OF APPEALS OF IOWA

No. 24-0320
Filed February 11, 2026

**Michael Holmstedt,**
Plaintiff–Appellant,

v.

**Lexington East Unit One Owners Association Board of Directors,**
Defendant–Appellee.

Appeal from the Iowa District Court for Linn County,
The Honorable Christopher L. Bruns, Judge.

**AFFIRMED IN PART AND REVERSED IN PART**

John G. Daufeldt of John C. Wagner Law Offices, P.C., Amana,
attorney for appellant.

Matthew L. Roth and Jacob W. Nelson of Simmons Perrine Moyer
Bergman PLC, Cedar Rapids, attorneys for appellee.

Considered without oral argument
by Greer, P.J., and Buller and Langholz, JJ.
Opinion by Langholz, J.

1

**LANGHOLZ, Judge.**

This appeal arises out of a dispute between a homeowner, Michael Holmstedt, and his condominium-association board, the Lexington East Unit One Owners Association Board of Directors. In the aftermath of the 2020 derecho, Holmstedt became concerned about the Board's governance of the association and eventually sued the Board. Among other claims no longer at issue on appeal, Holmstedt sought a declaratory judgment that the Board was required by the association's bylaws to obtain "an audit of the accounts and financial records of the Association" for 2018, 2020, and 2022. The Board moved for summary judgment, arguing that it had already obtained the required audits and that its decision about how extensive an audit to obtain was entitled to deference under the bylaws and the business-judgment rule. The district court agreed with the Board, dismissed Holmstedt's suit, and awarded the Board $25,948.28 in attorney fees under a bylaws provision that it concluded authorizes attorney fees in any suit in which the Board is a party.

Holmstedt now appeals, challenging only the district court's summary-judgment ruling on his audit claim and its award of attorney fees. The court did not err in granting summary judgment. While Holmstedt's interpretation of the bylaws' audit requirement is not unreasonable, he failed to generate a material factual dispute because the Board's interpretation is also reasonable and entitled to deference under the bylaws and the business-judgment rule. But we agree with Holmstedt's challenge to the attorney-fees award. The bylaws provision relied on by the district court—when properly interpreted in its full context—only authorizes attorney fees when the association sues for a money judgment on unpaid assessments or other sums due or to foreclose on its assessment lien. Neither situation exists here. So we reverse the attorney-fees award based on that bylaws provision.

## I.   Factual Background and Proceedings

On August 10, 2020, a powerful derecho swept across Iowa—damaging many properties, including Holmstedt's home and others that are a part of his condominium association.[1] Over the next two and a half years, Holmstedt became increasingly concerned about the association's response to the derecho damage and the Board's financial governance of the association more generally. As relevant to the only claim still at issue on appeal, Holmstedt eventually learned that article XII, paragraph 3, of the association's bylaws requires the Board to "procure an audit of the accounts and financial records of the Association not less than every two (2) years." He repeatedly requested copies of the most recent audits and was dissatisfied with the Board's responses.

So Holmsted sued the Board seeking many declaratory judgments. One such claim sought an order "compelling the Board to engage a third-party to investigate and conduct an audit as mandated by [the bylaws] for the years of 2018, 2020, and 2022." The Board moved for summary judgment, arguing that the claim was moot because the Board had already obtained the required audits for 2018, 2020, and 2022—as well as additional audits above what was required for 2019 and 2021. And the Board requested an award of its attorney fees defending the suit.

In support of its motion, the Board submitted an "Independent Accountant's Report on Applying Agreed-Upon Procedures" for each of those years that the Board had obtained to satisfy the bylaws' audit requirement. Each report included similar disclaimers that the accountants

---

[1] *See generally* NOAA National Weather Service, *August 10, 2020, Midwest Derecho: The Costliest Severe Thunderstorm Event in United States History* (Aug. 6, 2021), https://perma.cc/8RCR-JWM8.

"conducted our engagement in accordance with attestation standards established by the American Institute of Certified Public Accountants" but "were not engaged to and did not conduct an examination or review engagement, the objective of which would be the expression of an opinion or conclusion, respectively on the revenue, expenses, Board minutes, bank balances and controls over check signing and money transfer." One version of the disclaimer used the term "audit," saying: "We were not engaged to, and did not perform an audit, the objective of which would be the expression of an opinion on the financial statement elements, accounts and items and internal control over financial reporting described above."

The Board also submitted evidence about why it decided to comply with the bylaws' audit requirement in this way. In an affidavit, the Board's treasurer said that the Board learned from one of its independent accounting firms that "[a] narrow scope audit can be advantageous to entities comparable in size to [the association] because it is first, cheaper, but second, the audit focuses on certain agreed-upon financial aspects or matters" and that the firm "performed narrow scope audits for other homeowners' associations and entities comparable to" the association. While this was not "an audit that satisfies the Generally Accepted Auditing Standards," the Board understood that "[t]he term 'audit' is not defined within our governing documents." The treasurer also testified in her deposition that the Board had received legal advice that the agreed-upon procedures it obtained satisfied the bylaws' audit requirement. So the Board decided it would be best to proceed with a "yearly narrow scope audit" to satisfy its audit requirements under the bylaws. And the Board argued that all this "warrants application of the business judgment rule and deference to [the Board's] decision."

4

Holmstedt resisted summary judgment. On the audit claim, he mainly argued that the financial reports relied on by the Board "are not audits." He highlighted the disclaimers on each of the documents, his own testimony that the documents are not audits (Holmstedt is an accountant), and purported discrepancies between the treasurer's affidavit and her deposition testimony as grounds to find a factual dispute about whether the documents are audits. He did not address the Board's request for attorney fees.

The court granted summary judgment and dismissed Holmstedt's suit, relying on the business-judgment rule. It noted that nothing in the association's governing documents "defines 'audit,' how an audit must be performed, or what scope the audit shall take" and that the bylaws expressly give the Board the power to interpret bylaws provisions. The court reasoned that the Board exercised this power to decide to obtain a "narrow scope audit" for each of the years for which Holmstedt sought an order requiring an audit. And the court concluded that Holmstedt had not "create[d] a genuine issue of material fact on the question of whether [the Board] was acting in a reasonably prudent manner and in what it believed to be in the corporate interest."

The court also agreed that the Board was entitled to an award of attorney fees under the final sentence of article VII, paragraph 9, of the bylaws, which provides: "In the event of suit or foreclosure, the Association shall be entitled to collect reasonable attorneys fees from the owner." But the court did not award attorney fees. Rather, it "establish[ed] a briefing schedule for submission of the attorney fee issue." That schedule set a deadline for the Board to "file an affidavit in support of its attorney fee award, along with written argument in support of its fee request," for Holmstedt to respond, and for the Board to reply before the issue was "resubmitted to the Court."

Holmstedt appealed the summary-judgment ruling. Meanwhile, the Board filed an application for $25,948.28 in attorney fees based on the bylaws provision.[2] In his timely response to the application, Holmstedt argued that the provision did not authorize attorney fees for this declaratory judgment action brought against the Board. He urged the court to interpret that final sentence of article VII, paragraph 9, in context with the rest of that paragraph and the article. And under his contextual interpretation, the only "suit" for which attorney fees are authorized is one by the association to collect unpaid assessments from an owner.

The court rejected Holmstedt's argument that the bylaws provision did not apply, reasoning:

> The clause entitling Defendant to attorneys' fees is not limited to any particular type of suit, or to only actions involving unpaid dues. The Court is persuaded by [the Board's] argument that "suit" can include a lawsuit for money damages or equitable relief, with [the Board] as a party to the litigation. [The Board] is entitled to recover attorneys' fees related to this suit brought by [Holmstedt].

And so, it granted the Board's application and ordered Holmstedt to pay $25,948.28 in attorney fees based on the bylaws provision.

Holmstedt appealed from the order awarding attorney fees too. And the supreme court consolidated his two appeals into this case. He now challenges only (1) the district court's summary-judgment ruling on his request for a declaratory judgment that the Board was required by the

---

[2] The Board also separately filed an application for $1,153 of its attorney fees for moving to quash an improper subpoena served by Holmstedt. In the court's earlier order quashing that subpoena, the court ruled that "an award of sanctions is appropriate" and set deadlines for the Board to submit its application for "fees it claims were incurred as a result of the filing of the Motion to Quash" and for Holmstedt to respond. Holmstedt did not file any response to this application. And the court granted it, awarding $1,153 in fees.

association's bylaws to obtain "an audit of the accounts and financial records of the Association" for 2018, 2020, and 2022; and (2) its award of $25,948.28 in attorney fees under the bylaws provision.[3]

## II. Audits of the Association's Accounts and Financial Records

Holmstedt first argues that the district court erred in granting summary judgment on his claim that the Board was required under the association's bylaws "to engage a third-party to investigate and conduct an audit . . . for the years of 2018, 2020, and 2022." According to Holmstedt a fact dispute remains about whether the financial reviews obtained by the Board are "an audit of the accounts and financial records of the Association" as article VII, paragraph 3, of the bylaws requires. Holmstedt did not make any legal or factual challenge to the district court's application of the business-judgment rule in his opening brief—only belatedly addressing that issue in reply after the Board highlighted his waiver of the issue in its brief.

We review a decision granting summary judgment for correction of errors at law. *See Roberts v. Roberts*, 6 N.W.3d 730, 735 (Iowa 2024). Summary judgment is required when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). To overcome a well-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that

---

[3] In his reply brief, Holmstedt argues that he "preserved error on" all the issues in his declaratory judgment petition. But his problem is waiver—not error preservation. Holmstedt makes no argument in his briefing as to why the district court erred in granting summary judgment on any issue except for the one we reach in this opinion. By failing to make any argument supported by authority on the other issues, he has waived them. *See Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994) (holding that "random mention" of issue in a brief "without elaboration or supportive authority, is insufficient to raise the issue" for appellate review); Iowa R. App. P. 6.903(2)(a)(8)(3).

there is a genuine issue for trial." *Id.* r. 1.981(5). While the summary-judgment record is viewed "in the light most favorable to the nonmoving party," the nonmoving party must "go beyond generalities" and "show what evidence it has that would convince a trier of fact to accept its version of the events." *Feeback v. Swift Pork Co.*, 988 N.W.2d 340, 346–48 (Iowa 2023) (cleaned up). This requirement "weed[s] out paper cases and defenses in order to make way for litigation which does have something to it." *Id.* at 348 (cleaned up).

The rights and obligations of an incorporated nonprofit condominium association[4] and its members (the owners of individual units within the condominium) are set by the association's bylaws and other governing documents. *See Oberbillig v. W. Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 149–50 (Iowa 2011); *see also* Iowa Code §§ 499B.14–.15, .21 (2020). Those documents "create a contractual relationship" between a condominium association and its members. *Oberbillig*, 807 N.W.2d at 149 (cleaned up). But that does not mean that a member of the association may run to court anytime he believes the association or its board has violated the bylaws. A court must give deference to business decisions of an association's board when the business-judgment rule applies. *See id.* at 155–56. That rule "severely limit[s] secondguessing of business decisions which have been made by those whom the corporation has chosen to make them" so long as "the directors act in

---

[4] We use the more common term, "condominium," but the statutory term in Iowa is "horizontal property regime." *See, e.g.*, Iowa Code § 499B.3 (2020). And while the statute does not require incorporating a nonprofit association to conduct the business and affairs of the "council of co-owners"—the operative statutory term—it authorizes the organization of a nonprofit corporation for that purpose. *Id.* § 499B.2(4). Because a nonprofit corporation was organized here, we do not consider whether the business-judgment rules would apply to actions of a condominium's council of co-owners conducting its affairs without doing so.

good faith and in a manner they reasonably believe to be in the best interest of the corporation." *Id.* (cleaned up).

Of course, the business-judgment rule does not "permit directors to violate an unambiguous bylaw." *Id.* at 154. It merely gives "judicial deference to board action authorized by the Association's governing documents." *Id.* But when a provision of the bylaws is ambiguous and the bylaws grant the Board authority to interpret and apply the bylaws, "we will not substitute our judgment for the interpretation of the Association board if the factual predicates for the rule are present." *Id.* at 156.

Applying these principles, our supreme court held in *Oberbillig v. West Grand Towers Condominium Association* that the association board's interpretation of an ambiguous bylaws provision—about the board's authority to authorize certain expenditures without a vote of all owners—was entitled to judicial deference under the business-judgment rule. *See id.* There, the bylaws gave the board the authority to interpret and apply the bylaws. *See id.* at 153. No evidence existed "that any of the Association board members were self-dealing or had a conflict of interest." *Id.* at 156. The board relied on legal advice about the bylaws' requirement. *Id.* And the record "show[ed] the directors acted in good faith, the decision was reasonably prudent and that the Board believed the decision to be in the corporate interest." *Id.* (cleaned up). Thus, even though the plaintiffs in that declaratory judgment action had "a reasonable" interpretation of the ambiguous bylaw provision, the supreme court deferred to the board's interpretation and dismissed their suit. *Id.* at 150, 156.

So too here. The crux of this dispute is the interpretation of a clause in article XII, paragraph 3, of the association's bylaws, providing that the Board "shall procure an audit of the accounts and financial records of the

Association not less than every two (2) years." No other provision of the bylaws defines "audit" or gives any contextual clues about the term's precise meaning. And while Holmstedt offers one reasonable interpretation, we cannot say that it is only the reasonable interpretation of the term. *See, e.g.*, *Audit*, *Merriam-Webster's Collegiate Dictionary* (10th ed. 1997) (defining its noun form as "a formal examination of an organization's or individual's accounts or financial situation" or "a methodical examination and review"); *Audit*, *Black's Law Dictionary* (12th ed. 2025) ("A formal examination of an individual's or organization's accounting records, financial situation, or compliance with some other set of standards."). So just as in *Oberbillig*, this bylaws provision is ambiguous. *See* 807 N.W.2d at 153.

And just as there, the bylaws here expressly give the Board the power and duty "[t]o interpret and apply the provisions of the condominium documents in matters of dispute between owners or between owners and the Association, which determination shall be binding on the owners." So "we will not substitute our judgment for the interpretation of the [Board] if the factual predicates for the [business-judgment] rule are present." *Id.* at 156. And again, as in *Oberbillig*, the undisputed factual record "shows the [Board] acted in good faith"—the Board acted with the advice of legal counsel and outside accountants and Holmstedt makes no claim of "self-dealing" or "conflict of interest." *Id.* (cleaned up). It also shows that the Board's decision to select a more cost-effective and narrow financial review that it could afford to perform annually rather than every two years "was reasonably prudent and that the Board believed the decision to be in the corporate interest." *Id.* (cleaned up). So the district court did not err in applying the business-judgment rule and deferring to the Board's interpretation of "audit."

True, this case was decided on summary judgment while *Oberbillig* was "tried at law." *Id.* at 149. But "construction and interpretation of the bylaw[s] and declaration of this condominium owners association"—including whether the term "audit" is ambiguous—"is a matter of law for the court." *Id.* And Holmstedt did not submit evidence generating a factual dispute over whether the business-judgment rule applies.[5] So the district court correctly concluded based on undisputed facts in the record that the business-judgment rule applies. Because the Board's interpretation of "audit" is thus entitled to deference, *see id.* at 156, Holmstedt's focus on disputing factually whether the financial reviews obtained by the Board met his heightened definition of an "audit" is misplaced. That dispute is immaterial.

The district court correctly granted summary judgment to the Board and dismissed Holmstedt's declaratory-judgment claim about the audit requirement.

## III. Attorney Fees

Holmstedt also challenges the district court's award of attorney fees to the Board, arguing that the bylaws do not authorize an attorney-fees award in a suit—like this one—brought by an owner against the Board. Before reaching the merits, we must consider whether Holmstedt preserved error by raising this issue before, and obtaining a ruling from, the district court. *See*

---

[5] What's more, Holmstedt waived any claim that the district court erred in applying the business-judgment rule by failing to make that argument in his opening brief. *See State v. Carroll*, 767 N.W.2d 638, 644 (Iowa 2009) ("We have repeatedly held we will not consider issues raised for the first time in a reply brief."); Iowa R. App. P. 6.903(2)(a)(8)(3). Even in his reply brief, he fails to point to any evidence generating a material fact dispute about the Board's good faith in interpreting the bylaws.

11

*Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

The Board sought an award of its attorney fees based on a bylaws provision in its motion for summary judgment seeking dismissal of the suit. Holmstedt resisted the motion but did not include any argument about the attorney-fees request. And in its order granting summary judgment, the district court agreed with the Board that it "is entitled to attorney fees in this matter" and set "a briefing schedule for submission of the attorney fee issue." That schedule first directed the Board to "file an affidavit in support of its attorney fee award, along with written argument in support of its fee request," then gave time for Holmstedt "to file any response" and the Board to reply to that response.

Holmstedt filed a timely response that argued—as he does on appeal—that the bylaws do not authorize an award of attorney fees here. The Board replied, engaging with the merits of Holmstedt's argument and arguing it was untimely. And in its order awarding fees, the district court noted that it had already ruled that the bylaws authorize an attorney-fees award in the summary-judgment order and that Holmstedt did not seek reconsideration of that order under Iowa Rule of Civil Procedure 1.904, so Holmstedt's objection "can be denied as untimely." Yet the court still addressed the merits of Holmstedt's argument, reasoning that "[e]ven if [Holmstedt's] objection on the attorneys' fees issue is considered timely," the Board "is entitled to recover attorneys' fees related to this suit brought by" Holmstedt.

Holmstedt thus preserved error on his claim that the bylaws do not authorize an award of attorney fees. He raised that claim to the district court,

and the court considered and rejected it in the order awarding attorney fees. *See Meier*, 641 N.W.2d at 537. True, the court had also ruled on that issue without any argument from Holmstedt in the summary-judgment order. But it did not finally resolve "the attorney fee issue" in that order—it set an adversarial briefing schedule. And until a final ruling, a court may revisit an interlocutory ruling to correct legal error. *See Iowa Elec. Light & Power Co. v. Lagle*, 430 N.W.2d 393, 396 (Iowa 1988). Holmstedt's response and the Board's reply—invited by the court in the briefing schedule to resolve "the attorney fee issue"—gave the court a chance to correct his claim of error with full adversarial briefing. And with the benefit of a reasoned decision by the district court rejecting Holmstedt's claim, we proceed to the merits.

"Generally, attorney fees are recoverable only by statute or under a contract." *Costello v. McFadden*, 553 N.W.2d 607, 613 (Iowa 1996). Here, the Board relies on a provision of the association's bylaws. And indeed, "bylaws create a contractual relationship" between a condominium association and its members. *Oberbillig*, 807 N.W.2d at 149 (cleaned up). So we must decide whether the bylaws "contain[] a clear and express provision" authorizing the attorney fees in this suit. *NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 470 (Iowa 2010); *see also Goche v. WMG, L.C.*, 970 N.W.2d 860, 864 (Iowa 2022) (explaining that "Iowa's adherence to the American rule" means that we "require[e] clear and unequivocal language in the statute or contract"). If the bylaws do contain such a provision, the court must award "reasonable attorney fees." *NevadaCare*, 783 N.W.2d at 470. We review an award of attorney fees "for an abuse of discretion" but in doing so, "will correct erroneous applications of the law." *Id.* at 469, 472 (reversing fee award as legal error when contract lacked enforceable fee-shifting provision).

As the required clear and unequivocal text authorizing the recovery of fees, the Board points to article VI, paragraph 9 of the bylaws, which provides:

> The share of all sums assessed payable by an owner but unpaid shall constitute a lien on the apartment of such owner prior to all other liens, except tax liens on the apartment in favor of any assessing unit or special district and all sums payable on a first mortgage of record, which lien may be foreclosed by the Association in the manner and with the consequence provided in Section 499B.17 of the 1987 Code of Iowa. In the event of foreclosure, the owner shall be required to pay a reasonable rental for the apartment if he remains in possession thereof. The Association may sue for money judgment for unpaid assessments or sums due without foreclosing or waiving any lien which it holds. In the event of suit or foreclosure, the Association shall be entitled to collect reasonable attorneys fees from the owner.

The Board urges that we need only look at the last sentence of the paragraph: "In the event of suit or foreclosure, the Association shall be entitled to collect reasonable attorneys fees from the owner." And it argues that the district court correctly interpreted that sentence to apply to this suit by Holmstedt seeking declaratory judgments about the Board's duties under the bylaws because the sentence does not limit the "suit" to which the Board's entitlement to collect fees from a property owner applies.

Holmstedt counters that the court erred by interpreting the last sentence in isolation. He reasons that properly considering its full context, that sentence authorizes attorney fees not for any suit—but only a suit by the association against an owner for money judgment for unpaid assessments or sums due or to foreclose on the association's lien for unpaid assessments. And because this is not such a suit, he argues that the bylaws do not authorize the court's award of attorney fees. Holmstedt has the better argument.

14

"Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012). Considering the entire text of the bylaws, we start by recognizing the sentence authorizing some attorney fees appears in article VII—one of twelve in the bylaws—titled, "Common Expenses; Assessments and Collections" (capitalization modified). Consistent with that title, the first eight paragraphs of the article spell out the common expenses that the association is responsible for paying and the procedures for assessing owners their share of those expenses.

Paragraph 9 then covers collections of those assessments. Its first sentence provides that unpaid assessments become a lien that can be foreclosed by the association. The second sentence clarifies that an owner is required to pay rent to the association if remaining in possession even "[i]n the event of foreclosure." The third sentence authorizes the association to "sue for money judgment for unpaid assessments or sums due without foreclosing or waiving any lien." And then the final sentence authorizes the association "to collect reasonable attorney fees from the owner" "[i]n the event of suit or foreclosure."

So in context, that final sentence is best read as authorizing attorney fees only in the two circumstances the other three sentences in paragraph 9 address: the association's foreclosure of its assessment lien or its suit "for money judgment for unpaid assessments or sums due." *See PennyMac Loan Servs., LLC v. Pheasant Trail Seventh Owners Ass'n*, No. 23-0017, 2024 WL 260096, at *4 (Iowa Ct. App. Jan. 24, 2024) (interpreting nearly identical bylaws text to reach the same conclusion). Nothing in the text of the final

sentence suggests that it sweeps broader than the rest of the paragraph. Its conditional clause matches up with those two circumstances—"suit" and "foreclosure." Indeed, if that clause were not intended to match up, it would be redundant to use both terms since foreclosure is merely a specific type of suit. The sentence also uses the term "*the* owner" rather than "*an* owner," which suggests that the term refers to a specific owner already identified rather than any owner that happens to be a party to any suit. And which owner does that refer to? The first sentence tells us—"an owner" with "sums assessed payable . . . but unpaid."

Our interpretation of the final sentence is also consistent with the only interpretation of the second sentence that would make sense. Both sentences are structured the same and thus should be interpreted similarly. They both apply "[i]n the event of foreclosure" without otherwise expressly specifying the type of foreclosure. They both refer to "*the* owner" rather than "*an* owner" in granting the association rights. And so, just as with the final sentence, the second sentence is best read as giving the association a right to rent from an owner remaining in possession only in the event of the specific foreclosure authorized in this paragraph—the association's foreclosure of the unpaid-assessment lien—rather than all foreclosures initiated by anyone. Yet if we followed the logic of the Board's proposed interpretation of "suit" there, the right to rent would apply even if the property were foreclosed by, and ownership transferred to, a bank holding the owner's mortgage. That cannot be correct.

This suit was not brought by the association—it was brought by Holmstedt, an owner. It neither sought a money judgment for unpaid assessments or sums due nor foreclosure on a lien for unpaid assessments— it seeks a declaratory judgment on the Board's governance duties. And so,

16

the final sentence of article VII, paragraph 9, of the bylaws does not clearly and unequivocally authorize an award of attorney fees for this suit. *See PennyMac*, 2024 WL 260096, at *4 (affirming denial of attorney fees based on a nearly identical bylaw provision when "[t]he Association ha[d] not sued for money judgment nor foreclosed on a lien"). The district court erred in concluding otherwise. We thus reverse the district court's award of $25,948.28 in attorney fees based on the bylaws provision.[6]

**AFFIRMED IN PART AND REVERSED IN PART.**

---

[6] The district court made two awards of attorney fees. Only one—an award of "$25,948.28 in relation to the entry of summary judgment in favor of [the Board] and dismissal of [Holmstedt's] claims"—was based on the bylaws. The other award of $1,153 was entered as a discovery sanction under the Iowa Rules of Civil Procedure for the Board's fees moving to quash an improper subpoena served by Holmstedt. Holmstedt did not resist that award in the district court and makes no argument challenging it now on appeal. Any challenge to that second award is thus not properly before us. So we do not disturb that award of $1,153 in attorney fees.