Arthur MAULDIN, Plaintiff–Appellant,

v.

G. Charles PANELLA; James E. Herrington, Jr.; Jim Borland; Beverly N. Campbell; Garry C. Wykoff, and Paula J. Wycoff; Harry R. Stoll, and Dorothy L. Stoll; Lloyd G. Thomas, Jr., and Jeannine Thomas; John E. Pexton, and Lela J. Pexton; Donna M. Vanderbilt; Gary A. Johnson, and Carolyn L. Johnson; Kay Osentowski, and Spencer A. Douthit; Marc L. Middel and Donna J. Middel; Robert R. Gunther, and Hildegard L. Gunther; Donald L. Bueche, and Dierdre M. Bueche, Trustees of Trust Dated 6/28/90; James B. Stewart, and Becky L. Stewart; Gary A. Graham, and Margaret E. Graham; Carol Panella; Jerold C. Robertson, and Margaret E. Robertson; John D. Stednick, and Susan M. Stednick; Lois V. Borland; David E. Korth,

and Kathryn J. Korth; John T. Dunn, Jr., and Janet E. Dunn; John H. Damschroder; Robert E. Friehauf, and Susan B. Friehauf; Kim M. Pearson; Edwin L. Harper, and Rebecca L. Harper, Defendants–Appellees.

No. 00CA0124.

Colorado Court of Appeals, Div. III.

Dec. 21, 2000.

Wyatt, Martell, Weaver & Rogers LLC, Todd W. Rogers, Fort Collins, CO, for Plaintiff–Appellant.

Zier Law Offices, Richard F. Zier, Fort Collins, CO, for Defendants–Appellees.

Opinion by Judge DAILEY.

Plaintiff, Arthur Mauldin, a property owner, appeals from a declaratory judgment requiring approval by a committee recently formed by defendants, forty-four other property owners in his subdivision, for a proposed use of his property. We reverse.

Plaintiff owns property in the Fairview Estates subdivision in Fort Collins, Colorado. Fairview Estates contains both commercial and residential properties, and plaintiff's property is the last undeveloped parcel in the commercial area.

Plaintiff wished to sell his property to a retail tire store company. The company obtained approval for its proposed use from two individuals who held themselves out to be the members of an Architectural Control Committee (old ACC) formed pursuant to 1962 subdivision covenants.

Defendants were residential property owners who objected to having a tire store in the subdivision. In 1997, they recorded amended subdivision covenants providing for a new Architectural Control Committee (new ACC). The new ACC informed plaintiff that it had to approve the tire company's proposed use of the property and that it was unlikely to give such approval.

Plaintiff thereafter sought declaratory relief to determine his rights. The trial court determined that the new ACC was the entity that had to approve the tire company's proposed use of the property. According to the trial court, the old ACC could not give the required approval because it had been superseded by the new ACC, and, in any event, had previously gone out of business.

### I. Controlling Covenants/Controlling ACC

Plaintiff contends that the trial court erred in determining that the new ACC, rather than the old ACC, was the appropriate entity to approve the intended use of the plaintiff's property. We agree.

The 1962 covenants provided, in pertinent part:

These Covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from the date these

Covenants are recorded, after which time said Covenants shall be automatically extended for successive periods of ten years unless an instrument signed by a majority of the then owners of all the lots in the subdivision has been recorded, agreeing to change said Covenants, in whole or in part.

The 1962 covenants were recorded, and first became effective, on August 2, 1962. According to plaintiff, these covenants were effective for 25 years until August 2, 1987; were automatically extended for 10 years, until August 2, 1997; and, unless amended prior to that time, were extended for another ten years, until August 2, 2007.

The 1997 amendments creating the new ACC were recorded on August 4, 1997—two days too late, according to plaintiff, to then go into effect.

The trial court determined that the 1997 amendments were currently effective because a "ten year lag time" before the amendments took effect was unreasonable, against public policy, and inconsistent with Colorado law.

■ Construction of covenants is a question of law which we review *de novo*. *See Rossman v. Seasons at Tiara Rado Associates*, 943 P.2d 34·(Colo.App.1996).

In *Johnson v. Howells*, 682 P.2d 504 (Colo. App.1984), a division of this court interpreted a covenant very similar to the one at issue here. There, the division held that the covenant was plain in its meaning: barring unanimous agreement, it could not be amended within the initially designated time period. To interpret the covenant otherwise, the division reasoned, "would be to render meaningless the reference therein to [the initial] twenty-year period. If the owners had intended that the covenants could be amended at any time ... they would not have needed to include any reference to a twenty-year period." *Johnson v. Howells, supra*, 682 P.2d at 505.

■ This case differs from *Johnson v. Howells* only in that the attempt to amend the covenants was made during a renewal period rather than during an initial period designated in the covenant. This distinction, however, is not significant, and the analysis

remains the same. To conclude, as the trial court did here, that the covenants could be amended at any time renders meaningless the language in the covenants concerning "automatic extension[s]" for successive 10 year periods of time. *See Illini Federal Savings & Loan Ass'n v. Elsah Hills Corp.*, 112 Ill.App.3d 356, 68 Ill.Dec. 340, 445 N.E.2d 1193 (1983); *Propps, Inc. v. Rogers*, 874 P.2d 818 (Okla.App.1994).

Consequently, we hold that when, on August 2, 1997, the renewal period began, without amendments to the covenants having previously been recorded, the original 1962 covenants were automatically extended for an additional 10–year period. And, because the 1962 covenants were and are still in effect, the ACC created by those covenants would, if still functioning, be the appropriate entity to act upon a request for approval of the commercial use of plaintiff's property.

## II.  Viability of the Old ACC

Plaintiff argues that the trial court erred in determining that the old ACC was no longer functioning at the time it approved his property for use as a tire store. We agree.

According to the trial court, the old ACC was no longer in business because one of the committee members (Dilsaver) no longer owned property in the subdivision, had resigned, and could not, in any event, act by himself to select a new committee member necessary to create a quorum for effective committee action.·

### A.  Property Qualifications

■ Nothing in the covenants themselves or in the statutory or case law of this state requires that an individual own property in the subdivision before he or she can serve on a committee for and on behalf of the subdivision.

In *Smith v. First Savings*, 575 So.2d 1033 (Ala.1991), the Alabama Supreme Court determined that a developer who no longer had any proprietary or pecuniary interest in the subdivision could be removed from its ACC even though he had been appointed pursuant to the covenants as the sole member of the

ACC. However, the *Smith* decision was largely premised upon the court's determination that the covenant was personal in nature rather than one running with the land.

Here, the covenants explicitly state that they are intended to run with the land, and they clearly concern the land as their restrictions evidence an intent to maintain a certain character and quality in the subdivision. *See Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Associates,* 867 P.2d 70 (Colo.App.1994) (covenants whose purpose was to benefit the subdivision by protecting its property values through an approval process related to the land).

In this situation, ACC members need not own property in the subdivision. *See Lookout Mountain Homeowners Ass'n v. Viewpoint Associates, supra* (where the covenants gave the developer the right to approve building and other improvement plans and the ability to transfer that approval right, these rights were not extinguished even though developer no longer held title to any land in the subdivision).

### *B. Resignation*

■ Plaintiff contends that the trial court erred in determining that Dilsaver resigned from the ACC in 1985 when he purported to resign from the ACC "of the residential area" but not from the "separate" ACC "for the business area" of the subdivision. We agree.

As defendants argue, under the 1962 covenants, there were no separate committees for residential and business areas; there was but one ACC, responsible for making decisions with respect to residential and commercial properties alike.

■ Normally, whether a person has resigned is a question of fact to be determined by the trier of fact. *City of Lakewood v. Brace,* 919 P.2d 231 (Colo.1996). Where, as here, however, the issue is presented only through stipulated facts and documentary evidence, an appellate court is free to draw its own conclusions regarding resignation. *See M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380 (Colo.1994).

■ A resignation is a "formal notification of relinquishing an office or position." *Black's Law Dictionary* 1311 (Rev. 7th ed.1999). A resignation may be conditioned upon certain events, and if the events do not occur, then the resignation is ineffective. *Ortin v. Schuett,* 157 Wis.2d 415, 459 N.W.2d 596 (App.1990). *See Diringer v. Industrial Commission,* 712 P.2d 1091 (Colo.App.1985) (employee who resigned as of a future date but was terminated before that date was eligible for full unemployment benefits until the effective date of his resignation).

Here, Dilsaver's resignation was conditioned upon his remaining eligible to serve as an ACC member with respect to commercial properties. His resignation was effective, if at all, only according to its terms. *See Babitzke v. Silverton Union High School No. 7J,* 72 Or.App. 153, 695 P.2d 93 (1985)(teacher who resigned from coaching did not also resign from teaching). Hence, Dilsaver remained qualified to act on plaintiff's request regarding the use of his property.

### *C. Selection of a New Committee Member*

■ Following the deaths of his other two colleagues on the ACC, Dilsaver acted alone to select a new committee member necessary to creating a quorum for ACC action.

The 1962 covenants provide that: "In the event of death or resignation of any member of the committee, the remaining members shall have full authority to designate a successor." According to defendants, the reference in the covenants to "remaining members" precluded Dilsaver from acting by himself to select successor members to the committee. We disagree.

Defendants' construction of the covenants would render the committee structure superfluous where, for instance, two of the three members resigned (or even died) simultaneously. In statutory construction, use of the plural includes use of the singular, § 2–4–102, C.R.S.2000, and common sense dictates a similar construction here. Thus, a single remaining member—as Dilsaver was here—was authorized to designate a new member of the ACC.

Consequently, Dilsaver did not exceed his authority in designating a new member of the ACC, and Dilsaver and the new member were not disqualified from approving the plans for plaintiff's property.

### III.   Coverage of 1997 Amendments

In light of our previous determinations, we need not address plaintiffs' additional contention that the new ACC has no authority over the commercial property because the 1997 amendments affect only the residential property in Fairview Estates.

Accordingly, the judgment is reversed.

Judge NEY and Judge KAPELKE concur.