160 P.3d 251 (2007)
Timothy D. GOOD, Plaintiff-Appellant,
v.
BEAR CANYON RANCH ASSOCIATION, INC., Terry and Cami L. Klein, Jerry and Lindsay Walls, John and Barbara Lawrence, Gulrez Malik, Robert Schooley, Michael and Betty Daunt, Louis and Rebecca Egebrecht, Michael and Susan K. Healy, Wesley Piwarczyk, Lyle and Beverly Breshears, Roger and Angela E. Norris, Parvez and Sohail Malik, Gerald M. and Michelle A. Cook, Tod and Rita Schadler, Robert P. and Karen L. Campbell, Scott and Heidi Ward, James V. and Georgia A. Koch, Nadeem N. Malik, Joseph and Pat Stephenson, William W. and Linda M. Airy, Rick and Pamela Sue Rolph, Steven T. Engman, Kirk E. and Donna K. Huffstater, Robert West, Deanne Bender, Paul Y. and Carol N. Iwata, Darryl Andrews, Scott and Lissa Oelkers, William B. and Kimberly S. White, David and Geula Resnick, Thomas and Annette Mulholland, Paul D. and Sheryl L. Easley, Tim J. McDonald, Natalie J. Hunter, Mark W. and Sandra L. Teets, Andrew F. and Gay Czopek, Rich and Cheryl Monroe, Jeffrey Stuffings, Ezzedin M. and Peggy R. Fitouri, Lester and Roslyn Colodny, John and Patricia S. Collins, George C. and Linda A. Moore, Kenneth L. and Judy Medlin, Daniel Duane Haltom, John and Marlene Accola, Robert L. and Nancy A. Pacheo, David and Margaret Richter, Dave and Monica Morales, Keith M. Callender, David J. Waltzman, Caroline Brower, and Cornwall Living Trust, Defendants-Appellees.
No. 05CA1220.
Colorado Court of Appeals, Div. III.
January 11, 2007.
*253 Good & Good, P.C., Robert G. Good, Centennial, Colorado; Ann Whalen Gill, L.L.C., Anne Whalen Gill, Castle Rock, Colorado, for Plaintiff-Appellant.
Ray Lego & Associates, Derrick D. Cornejo, Greenwood Village, Colorado, for Defendants-Appellees.
Opinion by Judge GRAHAM.
In this declaratory judgment action, plaintiff, Timothy D. Good, appeals the trial court's partial summary judgment in favor of defendants, Bear Canyon Ranch Association, Inc., and the owners of fifty-two individual homes in his subdivision. We affirm.
Bear Canyon Ranch is a residential housing development in Douglas County subject to certain restrictive covenants as set forth in the Declaration of Covenants, Conditions and Restrictions (the Declaration), which was originally recorded in 1995. Plaintiff purchased a lot in Bear Canyon Ranch with notice of the Declaration.
Section 8.8 of the original Declaration permitted "a Single Family Residence and as an accessory use, either a Caretaker Residence or Guest House (but not both)." In 2002, the homeowners amended Section 8.8 to prohibit, with the exception of certain specified parcels, the building of a guest house or caretaker residence.
Plaintiff sought a declaratory judgment that the amendment was invalid because, pursuant to the Declaration, amendments could not be made within the initial fifty-year period. The Association filed a motion for summary judgment, seeking a determination as a matter of law that the amendment was valid under the terms of the Declaration. The trial court granted the Association's motion, holding that the amendment was valid because the Declaration could be amended by the homeowners within the initial fifty-year period and that the requisite sixty-to-seventy percent of the homeowners had approved the amendment.
This appeal followed.

I.
Plaintiff contends that the trial court erred in concluding that the homeowners could amend the original Declaration during the initial fifty-year term. We disagree.
Construction of a covenant is a question of law that is reviewed de novo. Evergreen Highlands Ass'n v. West, 73 P.3d 1 (Colo.2003). Where the written language is definite, a reviewing court must follow the dictates of plain English in interpreting a covenant, and a covenant that is clear on its face will be enforced as written. Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n, 773 P.2d 1046 (Colo.1989). Covenants are construed as a whole, keeping in mind their underlying purpose. Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc., 21 P.3d 860 (Colo.2001); Quinn v. Castle Park Ranch Prop. Owners Ass'n, 77 P.3d 823 (Colo.App.2003). Any doubt relative *254 to the meaning and application of the covenant must be resolved in favor of the unrestricted use of property. Dunne v. Shenandoah Homeowners Ass'n, 12 P.3d 340 (Colo.App.2000).
Article 12 pertains to duration, amendments, and termination of the Declaration. Specifically, Section 12.1 provides:

Term: This Declaration and any amendments or supplements to it shall remain in effect from the date of recordation for a period of fifty (50) years. Thereafter, these Covenants shall be automatically extended for five (5) successive periods of ten (10) years each, unless otherwise terminated or modified as provided in this Article.
(Emphasis added.)
Focusing on the term "thereafter," plaintiff asserts that this covenant must be construed as prohibiting amendments until after the initial fifty-year period. Plaintiff contends that to conclude otherwise would render the reference to the fifty-year term meaningless. In support of such a construction, plaintiff argues that the covenant is "virtually identical" to the covenants in Mauldin v. Panella, 17 P.3d 837 (Colo.App.2000), and Johnson v. Howells, 682 P.2d 504 (Colo.App.1984). There, divisions of this court construed the phrase "after which time" as prohibiting amendments to the original declarations until after the expiration of the initial term. Plaintiff's reliance on Mauldin v. Panella and Johnson v. Howells is misplaced.
In Johnson v. Howells, the agreement provided:
These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty (20) years from the date hereof after which time said covenants shall be automatically extended for a successive period of 20 years unless an instrument signed by sixty percent of the then owners of the property has been recorded, agreeing to change said covenants in whole or in part.
Johnson v. Howells, supra, 682 P.2d at 505.
A division of this court held that the plain meaning of the paragraph was that "the covenants will be binding for twenty years, after which time they are automatically extended unless sixty percent of the property owners agree to change them and record an instrument to that effect." Johnson v. Howells, supra, 682 P.2d at 505. The division further stated that if the owners had intended to allow amendments at any time, they would have had no need to include reference to a twenty-year period in the first place. Johnson v. Howells, supra; see also Mauldin v. Panella, supra (the court, interpreting a covenant very similar to the one at issue in Johnson v. Howells, supra, held that when the renewal period began, without amendments to the covenants having previously been recorded, the original covenants were automatically extended for an additional ten-year period, noting that to conclude that the covenants could be amended at any time renders meaningless the language in the covenants concerning automatic extensions for successive ten-year periods).
Unlike the covenants in Johnson v. Howells and Mauldin v. Panella, the covenant here expressly provides that "any amendments or supplements [to the Declaration] . . . shall remain in effect from the date of recordation for a period of fifty (50) years." (Emphasis added.) The inclusion of the terms "amendments" and "supplements" contemplates that amendments may be made to the covenants during the initial fifty-year period. Nothing in the Declaration limits the making of amendments until after the expiration of the initial term.
Nevertheless, relying on Section 2.14 of the Declaration, plaintiff asserts that the phrase "amendments or supplements" refers only to amendments or supplements executed by the declarant, and not the homeowners. He therefore argues that the only amendments allowed during the initial fifty-year period are those executed and recorded by declarant. We are not persuaded.
Section 2.14 defines "Declaration" as
this Declaration, together with any supplement or amendment to this Declaration, and any other recorded instrument however denominated which exercises a Development Right, executed by Declarant and recorded in the Records. The term Declaration *255 includes the Survey and any other plat recorded with this Declaration without specific reference thereto, if any.
(Emphasis added.)
Because the term "Declaration" necessarily includes amendments and supplements executed by the declarant, to interpret the terms "amendments" and "supplements" in Section 12.1 as only those made by the declarant would render those terms superfluous. Contrary to plaintiff's contention, Section 2.14 in no way operates to limit the terms "amendments" and "supplements" as used in Section 12.1 to only those executed by the declarant.
Reading the Declaration as a whole, we conclude that amendments by the homeowners may be made during the initial fifty-year term. Section 12.2 of the Declaration provides the mechanism for homeowners to amend the Declaration:
Except to the extent that this Declaration and the Act expressly permit or require amendments that may be executed by the Declarant or by the Association, this Declaration may be amended only by a vote or agreement of Parcel Owners to which at least sixty-seven percent (67%) of the votes in the Association are allocated and the unanimous consent of all Parcel Owners shall be required to amend Section 8.11 of this Declaration.
There is nothing in this section limiting when homeowners can amend the terms of the Declaration. Indeed, Section 12.5 provides that any amendment to the Declaration "shall be immediately effective upon the recording of the executed amendment in the Records together with a duly authenticated certificate of the Declarant or the Secretary of the Association stating that the required vote" of the homeowners, if any, was obtained. Furthermore, Section 12.4 allows the homeowners to amend the Declaration even during the "Period of Declarant control," provided that "the written approval of Declarant is first obtained." The "Period of Declarant control" commences "upon the filing of the Articles of Incorporation of the Association," which must be filed no later than the date the first parcel is conveyed to a purchaser. Because the declarant controls the Association at some point during the initial fifty years after the Declaration is recorded, Section 12.4 clearly contemplates that homeowners may amend the Declaration during this period.
This interpretation is also inconsistent with § 38-33.3-217(1)(a)(II), C.R.S.2006, which states: "If the declaration provides for an initial period of applicability to be followed by automatic extension periods, the declaration may be amended at any time in accordance with subparagraph (I) of this paragraph (a)." The plain language of this subsection clearly allows for amendments "at any time," including during the initial term, where, as here, a declaration provides for an initial period of applicability followed by automatic extension periods.
We conclude that the plain language of the Declaration contemplates that the homeowners may amend the covenants during the initial fifty-year period, so long as certain procedures are followed. There is no dispute that those procedures were followed and[?] sixty-seven percent of the homeowners approved the amendment to Section 8.8 of the Declaration. Thus, the amendment is valid.

II.
Plaintiff next argues that § 38-33.3-217(4.5), C.R.S.2006, of the Colorado Common Interest Ownership Act (CCIOA), does not permit the homeowners to create a new use restriction or to remove a specifically permitted land use. We are not persuaded.
Section 38-33.3-217(4.5) provides as relevant here:
Except to the extent expressly permitted or required by other provisions of this article, no amendment may change the uses to which any unit is restricted in the absence of a vote or agreement of unit owners of units to which at least sixty-seven percent of the votes in the association are allocated or any larger percentage the declaration specifies.
(Emphasis added.)
Plaintiff urges us to interpret the phrase "change the uses to which any unit is restricted" as permitting changes only to existing *256 restrictions and covenants, not the creation and addition of new restrictions and covenants or the removal of specifically permitted uses. We do not read such a limitation into the language.
Section 38-33.3-217(4.5) specifically requires sixty-seven percent owner approval to change the uses to which any unit is restricted. Although this subsection governs situations where homeowners would like to change an enumerated use to which a lot is restricted, it does not operate to preclude homeowners from seeking to create a new use restriction or to remove a specifically permitted land use pursuant to the terms of a declaration. See Evergreen Highlands Ass'n v. West, supra, 73 P.3d at 2 (modification clause in covenants which stated owners "may change or modify any one or more of said restrictions" was expansive enough to allow adoption of new amendment).
Here, the amendment is valid because it is specifically permitted by Section 12.2 of the Declaration, which provides in relevant part that "this Declaration may be amended only by a vote or agreement of Parcel Owners to which at least sixty-seven percent (67%) of the votes in the Association are allocated."
We conclude that the modification clause of the Declaration allows for the adoption of a new restrictive covenant or the removal of a specified use and that the amendment to the original Declaration, passed by the requisite majority of lot owners, is valid and binding on all lot owners in Bear Canyon Ranch.

III.
We also reject plaintiff's contention that the amendment violates his due process rights because the right to build a guest house or caretaker residence on his property was taken without his consent and without compensation.
It is undisputed that plaintiff was on actual notice of the association's power to modify the declarations when he purchased his lot. See Evergreen Highlands Ass'n v. West, supra. The purchase and sale agreement signed by plaintiff states that he reviewed and understood all documents referenced in the agreement, including the Declaration. We conclude that plaintiff consented to the terms of the Declaration after receiving notice of its terms, which included the homeowners' right to amend the covenants.
Furthermore, the amendment does not constitute a "taking" of plaintiff's property because there was no state or government action. Cf. Woodmoor Improvement Ass'n v. Brenner, 919 P.2d 928 (Colo.App.1996) (although the CCIOA establishes a comprehensive and uniform framework for the creation and operation of homeowners associations, plaintiff cites no authority supporting the proposition that enactment of a legislative scheme governing the operation of homeowners associations thereby transforms such homeowners associations into cities or other governmental entities). Rather, the homeowners' right to impose a new use restriction on property is clearly contractual. Thus, plaintiff's due process claims fail.

IV.
Last, plaintiff contends that the trial court erred when it required that all the homeowners within the development be brought into the action as indispensable parties pursuant to C.R.C.P. 57(j) and § 13-51-115, C.R.S.2006. We disagree.
Unless the trial court's resolution of a joinder issue reflects a clear abuse of discretion, we may not overturn that decision on appeal. The issue whether a party is characterized as indispensable turns on the facts of each case. Dunne v. Shenandoah Homeowners Ass'n, supra.
Although injury to the absent party is the most important factor in determining indispensability, other factors are recognized, such as the danger of inconsistent decisions, avoidance of multiplicity of suits, and the reluctance of a court to render a decision that will not finally settle the controversy before it. Dunne v. Shenandoah Homeowners Ass'n, supra.
Pursuant to C.R.C.P. 57(j) and § 13-51-115, when declaratory relief is sought, "all persons shall be made parties who have or claim any interest which would be affected by the declaration." Here, plaintiff's complaint *257 requested a declaration that the amendment was invalid and should not be applied. Thus, the interests of all the individual homeowners (other than perhaps the owners of the four parcels to which the new restriction did not apply) were affected.
Additionally, although plaintiff commenced this suit only against the Association, the individual homeowners of the Association had potentially conflicting interests with one another and with the Association itself. The fact that § 38-33.3-302(1)(d), C.R.S.2006, gives a homeowners association standing to sue, defend, or intervene in a lawsuit under CCIOA does not change the result here. See Dunne v. Shenandoah Homeowners Ass'n, supra. Thus, under the circumstances, the trial court did not abuse its discretion in requiring joinder of the homeowners.
The judgment is affirmed.
Judge CASEBOLT and Judge KAPELKE,[*] concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24-51-1105, C.R.S.2006.