**In re the MARRIAGE OF Jonathan CUTLER and Tere P. Cutler**

**Upon the Petition of Jonathan Cutler, Appellant,**

**And Concerning Tere P. Cutler, Appellee.**

**No. 97–1464.**

Supreme Court of Iowa.

Jan. 21, 1999.

Rehearing Denied March 12, 1999.

J.W. McGrath of McGrath & McGrath, P.C., Keosauqua, and Hugh J. Cain of Hopkins & Huebner, P.C., Des Moines, for appellant.

Steven Gardner of Kiple, Kiple, Denefe, Beaver & Gardner, L.L.P., Ottumwa, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and TERNUS, JJ.

CARTER, Justice.

Jonathan Cutler, the petitioner in a marriage dissolution action adjudicated by court decree in October 1995, has appealed from a subsequent order of the district court vacating that decree based on the petition of respondent, Tere P. Cutler, under Iowa Rule of Civil Procedure 252(b). The court of appeals affirmed the vacation of the judgment on grounds different from those relied on by the district court. After reviewing the record and considering the arguments present-

ed, we vacate the decision of the court of appeals and reverse the judgment of the district court.

Jonathan and Tere Cutler were married on December 22, 1984, in Puerto Rico. One child was born to the marriage, Mollie, on February 7, 1991. Jonathan and Tere ultimately established a residence in Fairfield, Iowa, where Jonathan commenced practice as an ophthalmologist. His primary practice was in Fort Madison, with satellite offices in Burlington, Keokuk, and Keosauqua.

In August 1995, while on vacation at their property in Massachusetts, Jonathan and Tere discussed the impending dissolution of their marriage. Upon their return, they contacted Kenneth Ketterhagen, a friend and local attorney. Ketterhagen informed them he could only represent one of them but that he would be willing to mediate the dissolution.

The dissolution proceedings moved at a rapid pace. By September 1995 Jonathan was being informed of the tax consequences of a dissolution. Tere was not completely informed of the financial considerations; several of the parties' tax returns were filed without her signature. On September 20, 1995, Tere arranged a conference with Ketterhagen. She went to this meeting without her own counsel. Tere and Ketterhagen discussed a possible financial settlement wherein she would receive $250,000 in cash and certain items of tangible personal property. Tere rejected this offer, and Ketterhagen countered with her being assigned ownership of a promissory note with an unpaid balance of $42,000. On September 25, 1995, Ketterhagen wrote Jonathan and Tere a formal letter providing a more detailed view of their custody and financial concerns.

During this period of time, Ketterhagen also represented several of Jonathan's employees. Payment for these services came from Jonathan. Ketterhagen also became financially intertwined with Jonathan in a venture known as Polar Dreams. At some point, Ketterhagen needed more money to stabilize his cash flow. A principal of Polar Dreams informed Ketterhagen he would ob-

tain the money from Jonathan as a loan. Jonathan loaned Ketterhagen a total of $10,085.

The dissolution entered its final stages in October 1995 when Ketterhagen drew up the stipulation. Ketterhagen ultimately called attorney Stephan Small to attend a conference between the parties, at which Small would represent Tere. Ketterhagen testified that this occurred after Tere had selected Small from a list of attorneys Ketterhagen had furnished to her. Tere testified that Small was Ketterhagen's choice of an attorney to represent her. During the meeting, Small expressed concern about Tere's reluctance to press for physical care of Mollie. Tere stated she did not want to have physical care and wished to proceed. On October 6, 1995, Ketterhagen requested the court waive the filing of financial affidavits. He informed the court the parties did not wish to follow the child support guidelines, that Jonathan was seeking primary physical care of Mollie, and that he was requesting minimum child support from Tere. In its decree, the district court approved the stipulation of the parties.

Pursuant to the stipulation, Jonathan was awarded the primary care of Mollie, and Tere was accorded joint custody status as to all major decisions affecting the child's welfare. Tere was required to pay $50 per month for Mollie's support. Tere was awarded a $100,000 cash settlement, $65,000 of which was to be used to purchase a new home.[1] She was awarded the $42,000 promissory note, an automobile valued at $20,000, and horses and equestrian equipment valued at $46,000. Tere thus received over $350,000 in marital property. If the current financial statement of the parties had been disclosed to Tere immediately prior to the decree, it would have shown the value of the parties' assets to be $2,617,000 and their net worth to be $2,174,000.

Tere was awarded permanent alimony of $10,000 per month for thirty-six months terminable only on Jonathan's death. Thereafter, she was awarded permanent alimony of $2773 per month terminable upon Tere's re-

---

1. Evidence was presented and not disputed by Tere that she also was to receive an additional $150,000 in cash not mentioned in the decree payable over a three-year period.

marriage or the death of either party. There was a proviso in the decree that, if Jonathan's net income fell below $290,000 in any calendar year, the $2773 alimony payments, but not the $10,000 alimony payments, were to be ten percent of his net income.

Tere resided with Jonathan for six weeks following entry of the decree. During this stay, Tere discovered that Jonathan was considering a sale of his practice for $2 million. This caused Tere to become concerned about the fairness of the settlement. She contacted Small who was unaware of the sale and did not have a file regarding the case. The proposed transaction for sale of Jonathan's medical practice never took place.

Tere obtained another attorney and subsequently filed a petition under rule 252(b) to vacate the dissolution decree, claiming Jonathan had obtained the decree by fraud. She further alleged Jonathan had concealed assets and failed to properly disclose his financial status. Following a hearing, the district court entered its ruling, finding that the dissolution proceedings did not evolve from a full and free exchange of advice. The court determined that, although there were significant irregularities in the original decree, they stopped short of constituting fraud.[2] The court pointed out that Ketterhagen had informed Tere she should obtain independent counsel but that she refused to do so. However, the district court did make a finding that Tere had been "underrepresented" throughout the dissolution proceeding. The court stated in this regard:

Not only did the legal advice of this case come basically from one source, the financial advice as well came from sources at the instance of Jonathan. At one point there was an attempt to provide Tere with investment advice. However, it was the investment advice from Jonathan and not her counselor. Mr. Ketterhagen's deep involvement with his client ... may have compromised his judgment. The attorney's independent judgment in serving a client must never be compromised by like

matters. The real issue here is not whether Tere received a substantial financial settlement or not; the issue is not where primary physical care ultimately resided; the decision becomes one of how the process evolved. It did not come as a result of each party being fully and freely advised by attorneys ready to advocate each's position. Mr. Small indicated that he was only there to settle and he would not take the representation of a contested case.

The district court found that the underrepresentation thus described constituted an irregularity sufficient to vacate the decree under Iowa Rule of Civil Procedure 252(b).

The court of appeals affirmed, but on different grounds. The court of appeals ruled that the matters relied on by the district court did not rise to the status of irregularities cognizable under rule 252(b). However, the court concluded that the actions of Jonathan and Ketterhagen were sufficient to prove extrinsic fraud. We granted further review.

### I. *The District Court's Finding of Irregularity.*

Iowa Rule of Civil Procedure 252(b) provides

Upon timely motion and notice under R.C.P. 253 the court may correct, vacate, or modify a final judgment or order, or grant a new trial on any of the following grounds:

. . . .

(b) Irregularity or fraud practiced in obtaining the [judgment or order].

Iowa R. Civ. P. 252(b). This rule allows a court to vacate a final judgment or order or grant a new trial if an irregularity exists or the judgment was obtained by fraud. This court has defined "irregularity," as contemplated in rule 252(b), as

[t]he doing or not doing that, in the conduct of a suit at law, which, conformably with the practice of the court, ought or

---

2. With respect to the district court's consideration of Tere's allegations of fraud, it determined:

The case has problems. It speaks to fraud but falls just short. After all, Tere received a dis-

closure from the attorney. You can only do so much in guiding someone to a lawyer. She got a significant settlement.

ought not to be done. Violation or nonobservance of established rules and practices. The want of adherence to some prescribed rule or mode of proceeding; consisting either in omitting to do something that is necessary for the due and orderly conduct of a suit, or doing it in an unseasonable time or improper manner.

*Forsmark v. State,* 349 N.W.2d 763, 767 (Iowa 1984) (quoting Black's Law Dictionary 744 (rev. 5th ed.1979)).

In determining whether an irregularity has occurred for purposes of rule 252(b), this court has adopted some general principles. First, the rule covers cases in which a party suffers an adverse ruling due to action or inaction by the court or court personnel. *Costello v. McFadden,* 553 N.W.2d 607, 612 (Iowa 1996). Second, the action or inaction must be contrary to (1) some prescribed rule, (2) mode of procedure, or (3) court practice involved in the conduct of a lawsuit. *Id.* Finally, the party alleging the irregularity must not have caused, been a party to, or had prior knowledge of the breach of the rule, mode of procedure, or practice of the court. *Id.*

In *Costello* the claimed irregularity related to alleged unethical conduct by an attorney, including a claim of multiple representation. *Id.* at 610. With regard to the alleged unethical conduct, the court found no evidence that "either the court rendering the judgment or court personnel was a party to or had knowledge of the alleged ethical violations." *Id.* at 612. The court determined that none of the alleged violations related to a breach of any rule, mode of procedure, or court practice pertaining to the conduct of the litigation. *Id.*

The purposes for vacating judgments resulting from irregularities are to (1) promote the policy of law that every cause of action should be tried on the merits, and (2) ensure that litigation is fair and orderly. *Id.* The *Costello* court implied that an irregularity does not relate to the parties to the judgment when it stated that, "[i]n contrast to irregularity," fraud covers the conduct of a party who obtains judgment. *Id.* The court concluded that the allegations of attorney misconduct related solely to the relationship between attorney and client, and the alleged ethical violations had nothing to do with the court, court personnel, or the conduct of the litigation. *Id.* The *Costello* court concluded that such circumstances do not constitute irregularity for purposes of rule 252(b). *Id.* at 614. Applying these principles to the facts before the district court in the present case, we conclude, as did the court of appeals, that the circumstances were insufficient to establish irregularity cognizable under rule 252(b).

## II. *The Court of Appeals' Determination Concerning Fraud.*

After finding that the district court erred in finding irregularity sufficient to void the decree under rule 252(b), the court of appeals took up the matter of fraud alleged by Tere. It correctly noted that the type of fraud required to vacate a judgment under rule 252(b) must be extrinsic to the judgment.

The court of appeals concluded that the record in the present case indicates that Jonathan and Ketterhagen intentionally misled Tere into accepting terms of the stipulation without a full financial disclosure and adequate representation. The court concluded that this circumstance lulled Tere into a false feeling of satisfaction concerning the proposed stipulation and for that reason dissuaded her from seeking submission of the controversy to the court. As a result of those conclusions, the court of appeals then found, "the record supports a finding of extrinsic fraud pursuant to rule 252(b)." In concluding its opinion, the court of appeals stated:

We conclude the district court was correct to vacate the judgment and order a new trial but did so for the wrong reason. The evidence did not support a finding of irregularity, but did support a finding of fraud. Considering all the evidence, it was an abuse for the district court to fail to find sufficient evidence of fraud to vacate the judgment.

In seeking further review, Jonathan has challenged those conclusions.

Actions under rule 252(b) are law actions, not equity actions. *Kreft v. Fisher*

**430**

*Aviation, Inc.,* 264 N.W.2d 297, 303 (Iowa 1978); *Jacobson v. Leap,* 249 Iowa 1036, 1041, 88 N.W.2d 919, 922 (1958). Accordingly, the district court's finding that fraud had not been proven was binding on the court of appeals if supported by substantial evidence. Iowa R.App. P. 14(f)(1). A negative finding of fact concerning a party's failure to prove an element of its case may only be overturned on appeal if the appellate court determines that this element was shown to exist as a matter of law. *Public Fin. Co. v. Van Blaricome,* 324 N.W.2d 716, 718 (Iowa 1982); *First Nat'l Bank v. Claiser,* 308 N.W.2d 1, 3 (Iowa 1981). We do not believe that this was the case with respect to the district court's conclusion that fraud had not been established. Proving fraud is a difficult task. A plaintiff must prove several factors by clear and convincing evidence, including (1) misrepresentation or failure to disclose when under a legal duty to do so, (2) materiality, (3) scienter, (4) intent to deceive, (5) justifiable reliance, and (6) resulting injury or damage. *Clark v. McDaniel,* 546 N.W.2d 590, 592 (Iowa 1996). Although certain aspects of attorney Ketterhagen's role vis-à-vis Tere's interests may raise questions of possible dual representation, the consequences of such action on Tere's decision to settle for an agreed amount without a trial do not establish fraud as a matter of law. There was ample evidence indicating that Tere did not simply take what was offered to her and negotiated assertively until reaching an agreement that was to her satisfaction.

We have considered all issues presented and conclude that the decision of the court of appeals should be vacated. The judgment of the district court is reversed on the basis that the evidence fails to show an irregularity sufficient to vacate the decree under rule 252(b).

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED.**