# IN THE COURT OF APPEALS OF IOWA

No. 17-1801
Filed July 3, 2019

**JADE E. ROBINSON and SHANNON K. ROBINSON,**
Plaintiffs-Appellees,

**vs.**

**WILLIAM A. WELP and JOYCE A. WELP,**
Defendants-Appellants.
_____

Appeal from the Iowa District Court for Marshall County, Steven J. Oeth, Judge.

Home sellers appeal from the district court's ruling finding they breached their duty to disclose a snake problem in the home and awarding the home buyers damages and attorney fees; home buyers cross-appeal the court's determination the sellers did not breach a duty in failing to disclose a pool leak and the reduction of their requested award of attorney fees. **AFFIRMED ON BOTH APPEALS AND REMANDED.**

Barry S. Kaplan of Kaplan & Frese, LLP, Marshalltown, for appellants.

Joseph M. Borg and Melissa A. Schilling of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellees.

Heard by Potterfield, P.J., and Doyle and May, JJ.

**POTTERFIELD, Presiding Judge.**

Jade and Shannon Robinson purchased the home of William and Joyce Welp. The Robinsons later initiated suit against the Welps, claiming the Welps failed to disclose a number of known problems with the home. The district court determined the Welps had a duty to disclose a snake problem pursuant to Iowa Code chapter 558A (2016) and the purchase agreement, which they breached; the court awarded the Robinsons damages in the amount of $64,216.42 and costs and attorney fees of $55,212.

On appeal, the Welps challenge the district court's ruling, arguing the evidence does not support that there was a snake problem while they owned the home or that they had actual knowledge of any such problem. In the alternative, they argue newly-discovered evidence presented in their post-judgment petition to vacate requires that the court's judgment be vacated or modified. Additionally, they contest the district court's determination of "reasonable attorney fees," maintaining the award of fees should be further reduced.

On cross-appeal, the Robinsons maintain the district court should have also determined that the Welps failed to properly disclose leaks in an in-ground pool; they ask for additional damages. They also urge us to find that the district court abused its discretion in reducing their attorney-fee request and ask for an award of appellate attorney fees.

**I. Background Facts and Proceedings.**

The Welps listed the property at issue for sale in 2014. After touring the property a few times, the Robinsons made a full-price offer on the home for $185,000 in late August 2014. The offer form included a requirement that the

"Seller or Seller's Agent . . . deliver a written disclosure statement to Buyer prior to accepting an offer." Additionally, paragraph 8b provided: "Seller and Buyer acknowledge that the Seller of the real property has a legal duty to disclose MATERIAL ADVERSE FACTS and MATERIAL DEFECTS of which Seller has actual knowledge and which a reasonable inspection by Buyer would not reveal." It also included a provision that entitled either the buyer or the seller to costs and attorney fees from the "party at fault."

The Welps filled out a disclosure form. One of the questions on the form asked, "Is there a problem with mice, bats, snakes, spiders, roaches, etc?" The form provided boxes to mark for "Yes," "No," or "Unknown," and included a space to explain the "yes" answer. The Welps marked "No." Shannon Robinson signed the acknowledgment as purchaser. The Welps accepted the Robinsons' offer in a purchase agreement signed by the Welps as sellers and by Shannon Robinson as purchaser.

Although closing was not scheduled to take place until October, the Welps allowed the Robinsons to move into the home a few weeks early. Two or three days after moving in, the Robinsons found two large bull snakes in the home—a four-foot long snake downstairs on top of the bar and a second snake on the first floor of the home. The Robinsons, through their realtor, contacted the Welps about the snakes, and the Welps agreed to pay for professional pest control to come to the home. The Welps did not amend the disclosure for the home and did not otherwise inform the Robinsons of any history of snakes.

The closing took place as scheduled in October.

The Robinsons found another five or six bull snakes inside the basement of their home in the spring of 2015 and an additional three bull snakes in the fall of 2015. They found two more in spring 2016—before construction began—and another six or seven after. Altogether, the Robinsons estimate they found between eighteen and twenty-two live bull snakes in the home, including one that fell out of the drop ceiling onto Jade Robinson's head. They also found a snake in the pool on approximately three occasions. Additionally, they estimate they found forty snake skins in the insulation in the walls and drop ceilings.

In spring 2016, the Robinsons hired a construction contractor, Thomas Campbell, to remove the patio that abutted the home. Once the concrete was removed, they found two snake nests with the remains of a number of eggs that had been in a hollow spot under the patio. Additionally, once the concrete was removed, Campbell noted that although the outside of the home was brick, beneath the doorways was neither brick nor a wooden box sill, but rather bead board insulation. The insulation had several holes through it into the basement of the home, which Campbell and the Robinsons presumed was where snakes had entered the home. Campbell put in box sills. For the demolition and construction work, he charged the Robinsons $7200. He also prepared an estimate for the Robinsons, in which he stated that he could not say the snake problem had been eradicated because it was possible there were still snakes living in the walls and ceilings. He stated, "The only way I can see to eradicate the problem is to basically remove interior wall coverings on main floor and lower level including insulation and [attic] insulation along with [front] stoop of home."

He estimated it would cost $55,000 to complete the work and opined that the home would be uninhabitable for the two months the work would take.

In early November 2016, the Robinsons offered to rescind the sale of the property; the Welps refused to take the property back. The Robinsons then filed a lawsuit against the Welps, alleging that by not disclosing the snake problem or an issue with the in-ground pool leaking, the Welps breached both the requirements of the purchase agreement and the statutory requirement to disclose pursuant to Iowa Code chapter 558A. Based on the purchase agreement, the Robinsons also claimed the right to recover reasonable attorney fees and costs incurred in litigating the action.

The matter proceeded to a two-day bench trial in October 2017. At trial, William Welp testified he owned and lived in the property at issue from 1982 to 2014. Joyce lived in the home with him from 2003 until 2014. During the years he lived in the home, there were five times Mr. Welp found or knew someone else found a snake in the home. Additionally, he saw three or four snakes outside on the property each year, and other snakes made their way into the in-ground pool located on the property. Mr. Welp also testified about the pest-control measures he undertook while living in the home, including hiring a pest control specialist to spray the home for bugs four times annually, placing mouse traps and mouse bait in the home and garage, and applying insecticide in the yard and against the foundation of the home. During his deposition, Mr. Welp admitted that he undertook the pest control in an attempt to prevent snakes in and around the home, as he was deathly afraid of them.

Shannon Robinson testified about the snakes she and her husband had found in the home; with the most recent snake being found in January or February 2017. She also testified about how the family was unable to use the pool in 2015 because it consistently lost water, which made it difficult to keep the ratio of chemicals in balance. They had completed some repairs to the pool but believed there were others that still needed to be done. She testified they had made an offer on another home because they no longer felt able to live at the property in question.

The realtor the Robinsons worked with in buying the property in question also testified; she opined the home was "not marketable" and gave it a $0 value.

Clifford Giesking, who the Welps had relied upon for their pool maintenance and repair throughout many years, also testified. He testified that he put in a new pump and re-caulked the pool at the Welps' request in late August 2014. He also stated that he checked the lining of the pool at that time and did not find any holes. He opined that when he left, the pool was working as it was supposed to.

The district court found that, regarding the snake problems, the Welps breached both the purchase agreement and the statutory requirement to disclose, stating:

> The court concludes that the Welps did not know the extent of the snake problem; that is, that there were 22 snakes in the house. However, the court concludes that the Welps had knowledge of the existence of snakes in and on the property and did not properly disclose what they knew about the snakes. . . . The court believes that the knowledge of five snakes and one snakeskin being found in the house, even over many years passing as happened in this case, coupled with the knowledge of the existence of many snakes in the yard on the property and in the pool as admitted to by William

> Welp, coupled with all the snake prevention measures taken by William Welp, results in a requirement that the Welps, in good faith, should have disclosed the problem to the extent they were aware of the problem.

The court awarded the Robinsons damages in the amount of $64,216.42, which included $55,000 based on Campbell's estimate to eradicate the snakes from the home, $1000 per month living expenses for the two months Campbell estimated the home would be uninhabitable during the eradication, and $7216.42 to reimburse the Robinsons for the money already spent to fix the problem—including the removal of the patio and placement of the box sills. The court declined to award the Robinsons any damages related to the pool leak, as the court concluded the Welps were justified in relying upon Giesking's representation that the pool was in good working order at the time the house was sold. In its order, the court also granted the Robinsons' request for costs and attorney fees and ordered the amount to be determined at a later hearing.

In November 2017, the Robinsons filed an application for attorney fees, requesting "a reasonable amount of attorneys' fees and expenses in the total amount of $105,589.50, and expenses in the amount of $1677.17." The Welps resisted.

Then, in February 2018, the Welps filed a petition to vacate the judgment and grant a new trial. In support of their motion, the Welps maintained there was newly-discovered evidence warranting a new trial; namely, that the Robinsons had listed the property at issue for sale in December 2017 at a purchase price of $197,500. In their own disclosure, the Robinsons had checked both the "yes" and "no" box on the form regarding the pest question and supplemented their

answer by writing, "Snakes in the home, removed back patio in back of home, down to foundation, installed rim board and moisture barrier, have not had any for about a year now." The Welps asserted this evidence established that the Robinsons had obtained judgment by committing fraud upon the court.

On March 1, 2018, the court heard both the motion for fees and the motion to vacate the judgment. The Welps called Shannon Robinson to testify. She testified she and her husband had just accepted an offer to sell the home at issue for $160,000. Since they first listed the property in December 2017, they had reduced the price a number of times. Additionally, they had updated their disclosure form on February 26—just a few days earlier—to disclose a new snake skin that had just been found in the home. The Robinsons had not undertaken the eradication measures outlined by Campbell and did not plan to; the new buyers had signed an indemnity agreement regarding the snake issue. Mrs. Robinson testified her family closed on a different home soon after trial ended and then placed the property at issue for sale as they could not afford to pay two mortgages. Based on their remaining mortgage on the property at issue and other costs associated with the property and closing, she estimated the net total to her and her husband—assuming the house sale closed at the $160,000 offer—was a loss of $31,144.20. Following her testimony, the Welps called the Robinsons' attorney to testify regarding some of the charges included on the attorney-fee affidavit he submitted.

In its written ruling, the court acknowledged the sale of the home at issue for $160,000 was at odds with the opinion testimony of the realtor that the home had no value and was unmarketable. But the court noted it had never relied on

this testimony and also believed "the Robinsons had no option but to try and sell the home." The court also recognized the Robinsons had initially asked the Welps to rescind the contract selling the Robinsons the home, which the Welps refused to do. It concluded the allegations the Robinsons committed fraud were not legally sufficient to justify vacating the judgment, as the Welps were alleging intrinsic fraud and only extrinsic fraud can justify vacating a judgment. Additionally, the court concluded that listing of the home and possibly selling it did not constitute newly discovered evidence. In denying the motion to vacate, the court stated:

> Nothing the Robinsons did constitutes a basis for vacating the judgment or granting a new trial. Even if the Robinsons have now resold the home, they are doing so at a significant loss. Even if the Robinsons are not required to take the measures contemplated by the court ($55,000 repair by Campbell Construction), their damages based on the reduced selling price, coupled with the costs of sale, are comparable to the damages awarded by the court.

Regarding the Robinsons's application for attorney fees, the court considered the hours and rate requested and eliminated hours from thirteen separate billing time periods. Overall, the court reduced the number of hours of services from the requested 388.4 to 249 hours and reduced the hourly compensation to $215. Of the $105,589.50 requested, the court determined $53,535 was a reasonable award of attorney fees and awarded the requested expenses of $1677.17.

The Welps appeal from the district court's verdict and denial of their petition to vacate. The appeals were consolidated. The Robinsons cross-appeal.

**II. Standard of Review.**

We review the district court's ruling regarding breach of contract and the violation of a statute for correction of errors at law. Iowa R. App. P. 6.907. Similarly, "[a]ctions under [Iowa Rule of Civil Procedure 1.1012][1] are law actions, not equity actions." *In re Marriage of Cutler*, 588 N.W.2d 425, 429–30 (Iowa 1999). "Accordingly, the district court's finding that fraud had not been prove[d] [i]s binding on the court of appeals if supported by substantial evidence." *Id.* at 430.

"We review the court's award of attorney fees for an abuse of discretion." *Boyle v. Alum-Line, Inc.*, 773 N.W.2d 829, 832 (Iowa 2009).

**III. Discussion.**

**A. Snake Problem.**

The Welps raise a number of issues with the district court's conclusion they violated their duty—based on the purchase agreement and the statute—to disclose a snake problem with the property. They take issue with the definition of the word "problem," the fact that the question is written on the disclosure form in the present tense—when they contend they had not seen a snake in the home for fourteen years, whether it can be said they had actual knowledge of a problem with bull snakes specifically, and the definition of "adverse material fact."

The purchase agreement provides that the sellers have a legal duty to disclose any material adverse facts and material defects. In past cases, our court has determined that similar language "incorporates by reference the disclosure mandates of chapter 558A." *Johnson v. Baum*, No. 09-1340, 2010

---

[1] Formerly Iowa Rule of Civil Procedure 252.

WL 2757192, at \*4 (Iowa Ct. App. July 14, 2010); *see also Bramwell v. Tisue*, No. 99-2057, 2002 WL 532225, at \*2 n.4 (Iowa Ct. App. Mar. 27, 2002). The Welps disagree with this determination but do not distinguish their circumstances from those in the cases we have decided before; we are persuaded by our previous rationale.

Iowa Code section 558A.3(1) requires the sellers to make their disclosures "in good faith." We agree with the district court that checking "no" to the question asking, "Is there a problem with . . . snakes?" was a violation of their duty. The Welps argue they did not understand the snakes they were aware of in and around the property—five in the house over thirty-two years, three to four in the yard each year, and additional snakes found in the pool yearly—to be a "problem," but their extensive efforts to minimize the snakes in the yard and the food supply of the snakes in and around their home contradicts their contention. The presence of snakes in the structure of the home in the days following the Robinsons' move and in the following months indicate there was a snake problem to an extent the Welps knew about it when they completed the disclosure form.

Additionally, we are not persuaded by the Welps' assertion they did not have a duty to disclose because the question on the form was written in present tense—asking if there "is" a snake problem—as they had not seen a snake inside in fourteen years. First, nothing in the disclosure form limits the disclosure of "material adverse facts" to those affecting just inside the home as opposed to those outside on the property. Second, section 558A.3(2) requires the sellers to amend the disclosure statement "if information disclosed in the statement is or

becomes inaccurate or misleading, or is supplemented." The Robinsons' discovery of two large bull snakes in the home two or three days after moving in but before closing should have alerted the Welps of the need to amend their disclosures. And finally, even if we were convinced the Welps were unaware of a current snake problem, the question being written in the present tense does not curb the Welps' duty to disclose a material previously-existing condition. *See Stone v. Ford*, No. 17-0723, 2018 WL 2084849, at *2 (Iowa Ct App. May 2, 2018) (stating, "Iowa courts have repeatedly found a seller can be liable to a buyer for failing to disclose a known previously- or currently-existing condition so long as the condition is material" and collecting cases).

As to whether the Welps had actual knowledge of the snake issue, substantial evidence supports the district court's finding that while the Welps were likely not aware of the extent of the snake problem within the home, they did, in fact, have actual knowledge a snake problem existed. The Welps argue the snakes they found in and around their home over the years were garter snakes, which did not make them aware of the bull snake problem, but this argument is not supported by the evidence presented at trial. While many of their witnesses testified the snakes they saw in the home were garter snakes, Joyce Welp admitted that during her deposition, she had been shown a picture of what she later learned was a bull snake and that she agreed the picture matched the type of snake she saw on the property.

Finally, the Welps contend that the snake problem does not fall within the term "material adverse fact"—as used in the purchase agreement and defined by section 543B.5(15). We need not consider this argument, as the requirement in

the purchase agreement that the sellers disclose any material adverse facts is an extension of the duty—not a limitation upon it—to complete the disclosure form in good faith. *See, e.g.*, *Johnson*, 2010 WL 2725192, at *4 (finding the legal duty to disclose "material adverse facts" within "the purchase agreement subsumes the disclosure requirements"). Failing to disclose the snake problem on the disclosure form explicitly required by the purchase agreement is sufficient to violate the duty to disclose.

We agree with the district court that the Welps violated their contractual and statutory duty to disclose the snake problem on the property.

**B. Pool Leak.**

The Robinsons argue the district court was wrong to conclude the Welps did not violate their duty to disclose by marking "yes" to the question on the disclosure form whether the pool equipment was working. They maintain the Welps had a duty to disclose the past issues with the pool leak even though they believed—based on Giesking's report—that the pool was in good working order at the time of the sale. *See Yeboah v. Emans*, No. 12-0900, 2013 WL 1453231, at *3 (Iowa Ct. App. Apr. 10, 2013) (concluding the district court did not err in finding statutory liability based on non-disclosure of a sunroom leak the sellers believed was a repaired problem because chapter 558 "does not limit the required disclosures to active problems"). Unlike the snake issue above, we cannot say the past pool leak was a "material" issue that required disclosure. *Cf. Stone*, 2018 WL 2084849, at *2 (stating "Iowa courts have repeatedly found a seller can be liable to a buyer for failing to disclose a known" previously-existing condition "so long as the condition is material"). Giesking, who had worked on

and with pools for "probably forty years," testified re-caulking pools to prevent or stop leaks is a regular part of maintenance on a pool—not a material issue. As to other issues with the pool the Robinsons later uncovered, Giesking was unaware of any such issues at the time he did his final pool maintenance in August 2014. The district court found no fault with Giesking's testimony that the pool was in good working order the last time he saw it and concluded the Welps' reliance on Giesking's statement was justified. We agree. *See* Iowa Code § 558A.6(1) (providing the transferor "shall not be liable under" chapter 558A "for the error, inaccuracy, or omission in information required in a disclosure statement, unless that person has actual knowledge of the inaccuracy, or *fails to exercise ordinary care in obtaining the information*" (emphasis added)).

**C. Motion to Vacate or Modify Decision.**

The Welps maintain the district court should have vacated the judgment and granted a new trial on the merits because of fraud and newly-discovered evidence.

The Welps maintain the Robinsons committed fraud upon the court by allowing their real estate agent to testify that the property was unmarketable and without value due to the snake problem and then, after obtaining judgment in their favor, listing the home for $197,500 without completing the eradication process. First, we agree with the district court that the Robinsons, even if their real estate agent believed it did not have value and would not sell, had little choice but to attempt to sell the property once they obtained a different home— which they testified they were in the process of doing at trial. Second, the fact that an uninvolved third party was willing to pay $160,000 for the property in

question does not invalidate the real estate agent's opinion testimony that she did not believe the home was marketable. Moreover, the district court did not rely upon the real estate agent's testimony when reaching its determination of damages. And finally, even if the real estate agent's testimony contained an exaggerated opinion, "[a] claim of false testimony constitutes intrinsic fraud." *Phipps v. Winneshiek Cty.*, 593 N.W.2d 143, 146 (Iowa 1999). Intrinsic fraud is not a ground to vacate a judgment. *Id.*

The Welps also maintain the judgment should be vacated and a new trial granted based on the "newly discovered evidence" that the Robinsons were able to sell their home for $160,000 without completing the work outlined by Campbell to eradicate the snakes. We agree with the district court that this does not warrant a new trial. *See Benson v. Richardson*, 537 N.W.2d 748, 762 (Iowa 1995) ("We do not favor motions for new trial based on newly discovered evidence. We will not disturb a trial court's ruling unless the evidence clearly shows the court has abused its discretion." (citation omitted)).

Finally, the Welps maintain that even if we do not agree that vacating the judgment is appropriate, we should modify the awarded damages. They maintain the loss the Robinsons took on the sale of the property ($31,144.20) plus the amount they spent on the snake problem before trial ($7216.42) is significantly less than the $64,216.42 the district court awarded. This issue is not preserved for our review. The Welps filed a petition to vacate—not a motion to modify the judgment. We recognize the district court raised the issue of modification with the parties at the hearing on the motion, asking if the parties objected if the court considered a modification of the judgment "based on a

diminution of value argument, taking what they had in it, what they're getting out of—they're not spending the [$55,000] on Campbell assuming this goes through—and recalculating the judgment amount."[2]  But the court's written ruling is silent as to the issue of modification.  *See In re Det. of Anderson*, 895 N.W.2d 131, 138 (Iowa 2017) ("In order for error to be preserved, the issue must be both raised and decided by the district court.").

We will not upset the district court's denial of the Welps' motion to vacate the trial court judgment.

**D. Trial Attorney Fees.**

Both the Welps and the Robinsons appeal the district court's award of trial attorney fees to the Robinsons.  The Robinsons assert that the court abused its discretion in its reduction of the requested fees from $105,589.50 to $53,535, and the Welps maintain the award should have been further reduced.

"The reasonableness of the hours expended and the hourly rate depends, of course, upon the facts of each case.  'The district court is considered an expert in what constitutes a reasonable attorney fee.'"  *Boyle*, 773 N.W.2d at 832 (citations omitted).  There are a number of factors to be considered in determining the amount of a reasonable attorney fee, and the district court's decision must include findings of fact to support its determination.  *Id.* at 833.

Based on the district court's explicit findings regarding the appropriate factors and its role as an expert in making the determination, we cannot say the district court abused its discretion in awarding $53,535 in trial attorney fees.

---

[2] The Robinsons objected; the Welps did not directly respond to the court's question.

**E. Appellate Attorney Fees.**

The Robinsons maintain they may also recover appellate attorney fees and request a remand to the district court to determine the amount. The Welps are silent on the issue.

We agree with the Robinsons that the language of the purchase agreement that provides for the award of attorney fees does not limit itself to counsel's fee for litigation in the trial court. *See Bankers Trust Co. v. Woltz*, 326 N.W.2d 274, 278 (Iowa 1982); *see also* Iowa Code § 625.22 ("When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court.").

We grant the Robinsons' request to remand to the district court for a determination of the reasonable amount of attorney fees the Robinsons should be awarded on appeal. *Bankers Trust*, 326 N.W.2d at 278; *see also Lehigh Clay Prods., Ltd. v. Iowa Dep't of Transp.*, 545 N.W.2d 526, 528 n.2 (Iowa 1996) (stating the issue of appellate attorney fees is "frequently determined in the first instance in the district court because of the necessity for making a record"). We therefore remand to the district court for the limited purpose of an evidentiary hearing on and the fixing of appellate attorney fees.

**IV. Conclusion.**

We affirm the district court's ruling that the Welps breached their duty to disclose a snake problem on the property in question but did not breach a duty to inform the Robinsons of a past pool leak. We also affirm the district court's denial of the Welps' motion to vacate and the reduced award of attorney fees to

the Robinsons.[3]   Because the purchase agreement does not preclude the recovery of appellate attorney fees, we remand to the district court for the limited purpose of an evidentiary hearing on and the fixing of appellate attorney fees.

**AFFIRMED ON BOTH APPEALS AND REMANDED.**

---

[3] In their appellate brief, the Welps state in passing that Jade Robinson should be removed from the judgment because the relief granted the Robinsons was based on the purchase agreement, to which Jade was not a party.  No one mentioned this perceived error until after the judgment was issued.  When asked about the issue at appellate argument, the Welps conceded it was an issue of form over substance.  We do not rule on this issue.