# IN THE COURT OF APPEALS OF IOWA

No. 21-1124
Filed June 29, 2022

**DEENA ALISSA FRIES,**
        Plaintiff-Appellee,

**vs.**

**BROOKS SALOMON BARNEY,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

A father appeals the vacation of a right-of-first-refusal provision in a stipulated custody order and the denial of his contempt application. **AFFIRMED AND REMANDED.**

David L. Leitner of Leitner Law Office, West Des Moines, for appellant.

Elizabeth Kellner-Nelson of Kellner-Nelson Law Firm, P.C., West Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**TABOR, Judge.**

Brooks Barney and Deena Fries have a child in common, B.S.B. They mediated a custody agreement that awarded physical care of B.S.B. to Fries and visitation to Barney. But before signing and returning the custody stipulation, Barney and his attorney, David Leitner, silently inserted a right-of-first-refusal provision.[1] Leitner advised Barney that "it would probably be read and may or may not be accepted."

As it turned out, Fries and her attorney, Elizabeth Kellner-Nelson, did not notice the addition, signed the stipulation, and filed it with the court. Months after the court approved the parties' stipulation, Barney sought to hold Fries in contempt for not honoring "the right of first refusal when there is a need for babysitting" and not consulting him on other matters. Meanwhile, Fries petitioned to vacate the added provision under Iowa Rule of Civil Procedure 1.1012(2).

The district court granted the motion to vacate, finding Barney and Leitner perpetrated extrinsic fraud. The court also dismissed Barney's contempt application. Finding the district court properly analyzed both the fraud and the contempt actions, we affirm. We also find that Fries is entitled to an award of appellate attorney fees and remand for a determination of a reasonable amount.

---

[1] The phrase "right of first refusal" in our family law cases means the custodial parent must offer the non-custodial parent the chance to care for the child when the custodial parent is unavailable to provide supervision for a specified period before seeking a third-party child care provider. *See, e.g.*, *In re Marriage of Taylor*, No. 14-1652, 2015 WL 4935795, at *4 (Iowa Ct. App. Aug. 19, 2015).

## I.      Facts and Prior Proceedings

In April 2020, Fries petitioned to establish custody, visitation, and child support for B.S.B., who was born in 2017.  The next month, Barney was sentenced for domestic abuse assault for strangling Fries.  The criminal court entered a no-contact order but carved out an exception for "phone, written or electronic messaging" to address child custody and finances.  Under that exception, Fries and Barney mediated custody and presented their stipulation to the court.

Attorney Kellner-Nelson drafted the stipulation based on the parties' mediation agreement.  She sent the stipulation to her client, Fries, for approval.  After Fries approved, Kellner-Nelson emailed it to attorney Leitner for Barney to sign.  The draft stipulation, attached as a PDF, reflected the parties' agreement to place B.S.B. in Fries's physical care and set out this visitation schedule:

> 3.      Visitation.   Unless otherwise agreed, Brooks will be entitled to time with B.S.B every other weekend from Saturday at 4:00 p.m. until Sunday at 7:00 p.m. and every Tuesday from 6:00 p.m. until Wednesday at 7:00 a.m.

In a series of emails between the attorneys about the need to move forward, Leitner never mentioned the possibility of adding a right-of-first-refusal provision.  Yet the signed version of the document that he returned to Kellner-Nelson included a new sentence at the end of the visitation paragraph:

> 3.      Visitation.   Unless otherwise agreed, Brooks will be entitled to time with B.S.B every other weekend from Saturday at 4:00 p.m. until Sunday at 7:00 p.m. and every Tuesday from 6:00 p.m. until Wednesday at 7:00 a.m. Respondent sha first right of refusal to have B.S.B. whenever Petitioner is otherwise unable to care for him.

Kellner-Nelson did not notice the addition. And assuming the stipulation was unchanged, she sent just the signature page to her client. Fries signed the stipulation, and Kellner-Nelson filed it the next day. The court approved the stipulation on August 28. It was not until January 2021 that Fries learned of the right-of-first-refusal provision from Barney.

Shortly after that, Fries moved to strike the first-refusal sentence, or in the alternative to vacate the stipulation, alleging fraud under Iowa Rule of Civil Procedure 1.1012(2). Barney resisted, calling Fries's position "buyer's remorse." The district court denied the motion to strike because the stipulation had been approved as a final order. The court also ruled that the alternative request to vacate the order must be raised in a petition under rule 1.1013.

In March 2021, Barney sought a contempt finding. He alleged Fries failed "to give [him] the right of first refusal when there is a need for babysitting." He also alleged Fries failed to consult him on the child's daycare and religious training, as required by the stipulated custody order.

Before the contempt action was scheduled for hearing, Fries applied again to vacate the custody order, asserting the right-of-first-refusal provision was not part of the mediated agreement and was inappropriate given the no-contact order. Fries alleged that Barney practiced fraud in obtaining that provision. *See* Iowa R. Civ. P. 1.1012(2). Barney resisted, maintaining, "What we have here is a situation in which the parties were still negotiating the terms of the stipulation." He faulted Fries and her counsel for not reading the document before executing it.

The district court combined the contempt action and the application to vacate in a June 2021 hearing. Both Fries and Barney testified. Barney also called

two acquaintances who testified that they had seen Fries out at a bar on a Saturday night and at a casino on New Year's Eve without her son. He relied on their testimony to prove that he had not been given a right of first refusal to care for B.S.B. After the hearing, the court granted Fries's petition to vacate the right-of-first-refusal provision and dismissed Barney's contempt action. Barney appeals.

## II.     Scope and Standards of Review

We review the modification of a final judgment for fraud under Iowa Rule of Procedure 1.1012(2) for errors at law. *In re Marriage of Hutchinson*, ___ N.W.2d ___, ___, 2022 WL 1592166, at *5 (Iowa 2022). The district court has "considerable discretion" in deciding to vacate a judgment. *In re Marriage of Heneman*, 396 N.W.2d 797, 799 (Iowa Ct. App. 1986). The district court's finding of fraud is binding on appeal if supported by substantial evidence. *In re Marriage of Cutler*, 588 N.W.2d 425, 430 (Iowa 1999).

We review the court's refusal to hold Fries in contempt of the custody order for an abuse of discretion. *See In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995). Unless the court "grossly abused" its discretion, the contempt denial must stand. *Id.*

## III.    Analysis

### A.     Vacating First-Refusal Provision

Iowa Rule of Civil Procedure 1.1012(2) allows a court to "correct, vacate or modify a final judgment or order" if the petitioning party can show "fraud practiced in obtaining it." This petition "must be filed and served in the original action within one year after the entry of the judgment or order involved." Iowa R. Civ. P. 1.1013(1). Fries applied to vacate the right-of-first-refusal provision in May

2021, about eight months after the court approved the stipulation. Her burden was to prove by clear and convincing evidence that Barney practiced fraud in obtaining that provision. *See Cutler*, 588 N.W.2d at 430. Fraud has six elements: (1) misrepresentation or failure to disclose when under a legal duty to do so, (2) materiality, (3) scienter, (4) intent to deceive, (5) justifiable reliance, and (6) resulting injury or damage. *Id.* "The first three elements of a fraud claim are often treated as a single element and are referred to as fraudulent misrepresentation." *Clark v. McDaniel*, 546 N.W.2d 590, 592 (Iowa 1996).

Fraud comes in two varieties: extrinsic and intrinsic.[2] *In re Adoption of B.J.H.*, 564 N.W.2d 387, 391–92 (Iowa 1997). Extrinsic fraud is conduct by litigants that has "prevented a fair submission of the controversy." *In re Marriage of Short*, 263 N.W.2d 720, 723 (Iowa 1978). That conduct includes "lulling a party into a false sense of security or preventing [that party] from making a defense." *Stearns v. Stearns*, 187 N.W.2d 733, 735 (Iowa 1971). "Examples of extrinsic fraud are a bribed judge, [the] dishonest attorney representing the defrauded client, or a false promise of compromise." *Mauer v. Rohde*, 257 N.W.2d 489, 496 (Iowa 1977). By contrast, intrinsic fraud "inheres in the issues submitted to and decided by the court." *Stearns*, 187 N.W.2d at 735. Classic examples are perjury, submission of false exhibits, and concealing or misrepresenting evidence. *Mauer*,

---

[2] Critics bemoan the "unsound" distinction between the two fraud types, describing them as "difficult to understand and apply." *Hutchinson*, 2022 WL 1592166, at *16 n.10 (Iowa 2022) (McDonald, J., dissenting) (citing 11 Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 2861, at 426 (2012)). But because the parties have not challenged the distinction, we do not consider a different framework.

257 N.W.2d at 496. To vacate under rule 1.1012(2), the fraud must be extrinsic to the judgment. *B.J.H.*, 564 N.W.2d at 392.

The district court found that Fries satisfied her burden to show extrinsic fraud. On the element of fraudulent misrepresentation, the court decided:

> The actions of Leitner and Barney concealed and failed to disclose a material fact. Leitner and Barney added a right of first refusal, had Barney sign the Stipulation, and then returned it to Kellner-Nelson without noting that it had been revised. By returning the Stipulation already signed and failing to identify it was revised, their actions suggested Barney had accepted the Stipulation as drafted by Kellner-Nelson, instead of sending a revised version that still needed to be agreed to. The added provision had not been addressed or agreed to at mediation. Therefore, Barney and his counsel should have known that it would need to be considered. Meanwhile, Kellner-Nelson and Fries would not have known to be on the lookout for such provision.

The district court's findings are legally sound and supported by substantial evidence. So they are binding on our review.

As for the remaining elements, the court found an intent to deceive "based on the manner in which the provision was inserted and returned without any suggestion that a revision had been made." The court also found that Kellner-Nelson and Fries justifiably relied on how Leitner returned the document. To that end, "Fries wasn't even sent the entire agreement by her counsel, as it was assumed to be the same document circulated to her previously." Finally, the court determined that the right-of-first-refusal provision was material and its clandestine injection damaged Fries. The court credited Fries's testimony that she would not have agreed to that provision given Barney's history of domestic violence and the existence of the no-contact order. The court noted: "Barney's interpretation of the right of first refusal would require Fries to alert him anytime she decided to leave

the minor child in someone else's care (such as at home with her older children), even if it was only for an hour to go to the gym or the grocery store."

Again, the court makes no error of law and its findings on these elements are supported by substantial evidence. So they too are binding on our review. Thus, we reject Barney's challenges to the elements of fraud.

In the alternative, Barney argues that "[t]o the extent there was any fraud, which is not conceded, it is most certainly of the intrinsic variety." He downplays the deviousness of adding the provision without disclosure, insisting: "All that happened was, during negotiations, a slightly modified counterproposal was made in response to a draft." His insistence is disingenuous. The parties were not in negotiations. The mediation was done. And their mediated agreement did not include a right of first refusal.

The deceptive actions of Barney and Leitner fall into the category of extrinsic fraud because they occurred outside the trial framework. *See Mauer*, 257 N.W.2d at 496 (citing *Auerbach v. Samuels*, 349 P.2d 1112, 1114 (Utah 1960) (explaining extrinsic fraud is "practiced outside the actual trial upon the opposing party")). Their signatures on the stipulation signaled acceptance of the mediated agreement, lulling Fries and Kellner-Nelson into a false sense of security that the document remained in its original form. True, it would have been a better practice for Kellner-Nelson and Fries to read the final version of the stipulation returned by Leitner. But signing the stipulation without re-reading it did not defeat Fries's claim of extrinsic fraud. *See In re Marriage of Stanbrough*, No. 99-840, 2000 WL 1157844, at *4 (Iowa Ct. App. Aug. 16, 2000) (finding sufficient evidence of extrinsic fraud to warrant vacation of the economic and child custody provisions of

decree though wife signed stipulated decree prepared by husband "without really looking at it").

Finally, Barney invokes the doctrine of res judicata to claim that Fries's second application to vacate the right-of-first-refusal provision was barred by the court's denial of her first motion. Res judicata requires a "final judgment on the merits of an action." *In re Marriage of Erlandson*, 973 N.W.2d 601, 607 n.5 (Iowa Ct. App. 2022). But as the district court noted, its first order did not reach the merits of the first motion. Instead, the court denied the request to vacate without prejudice to Fries filing a petition under rule 1.1013. So Barney's claim of preclusion fails.

In sum, Fries offered clear and convincing proof of extrinsic fraud, requiring the court to vacate the right-of-first-refusal provision.

### B.     Denying Contempt

Barney next contends that the district court should have found Fries in contempt for not consulting him about sending B.S.B. to vacation bible school or changing daycares. He also argues that Fries should be held in contempt for ignoring the right-of-first-refusal provision, at least after January 2021 when he drew it to her attention.

To prove contempt, Barney must show that Fries willfully failed to obey the court order. *See Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). If he can show that violation, the burden shifts to Fries to produce evidence suggesting her violation was not willful. *Id.* But because contempt is quasi-criminal, Barney retains the burden to prove willfulness beyond a reasonable doubt. *Id.*

The district court decided that Barney failed to meet his burden. On his claim that she did not consult him before taking B.S.B. to a new daycare provider,

the court explained: "Fries was forced to locate a new daycare for B.S.B. after his daycare providers became ill with covid-19 (including one that passed away) and were no longer able to provide care. Fries was faced with an urgent situation to find replacement care so that she could work." The record also shows that Fries gave Barney the address and contact information for the new daycare before B.S.B. started there. As for vacation bible school, the court noted, "Fries enrolled B.S.B. in a week of [vacation bible school] at the church Barney, Fries, and B.S.B. used to attend and at which both Barney and B.S.B. were baptized. Fries informed Barney and indicated he could choose whether or not to take B.S.B. on his parenting time." According to Fries, Barney expressed no objection to that plan. In neither instance did the district court grossly abuse its discretion in declining to hold Fries in contempt of the consultation provision in the custody order. *See Swan*, 526 N.W.2d at 327 (encouraging courts to consider "all the circumstances" before punishing a party for contempt).

The district court likewise declined to hold Fries in contempt for violating the right-of-first-refusal provision. As shown above, that provision not only contained a typographical error, but was ungrammatical, vague, and unclear. It stated: "Respondent sha first right of refusal to have B.S.B. whenever Petitioner is otherwise unable to care for him."

Still, Barney alleged three violations: "First, Fries went to the grocery store and left B.S.B. with her significantly older children. Second and third, she went out at night on two occasions—a weekend night and New Year's Eve." The district court found that it was "untenable" to interpret the first-refusal provision to cover errands or other short trips out of the home. We agree. *See In re Marriage of*

*Lauritsen*, No. 13-1889, 2014 WL 3511899, at *3 (Iowa Ct. App. July 16, 2014) (holding modification from twelve consecutive hours to eight hours was unreasonable because custodial parent would have to check with the noncustodial parent "*every day* to allow him the option (which he may refuse)" to keep the child for the day while she worked). The added provision was too indefinite to enforce. The court did not abuse its discretion in dismissing the contempt action.

### C.      Appellate Attorney Fees

Finally, Fries seeks an award of appellate attorney fees. Such an award is within our discretion. *See In re Marriage of Bacon*, No. 11-0368, 2011 WL 4579601, at *5 (Iowa Ct. App. Oct. 5, 2011). But her appellee's brief does not identify the amount of fees she has incurred in defending the district court's ruling. And we do not see an attorney affidavit in the appellate record. We agree a fee award is warranted on this record, but we remand to the district court to determine a reasonable amount.

**AFFIRMED AND REMANDED.**